Robert W. STRADLEY

v.

LAFOURCHE COMMUNICATIONS, INC.
d/b/a CVI Cablevision Industries, Inc.

Civ. A. No. 93-3041.

United States District Court,
E.D. Louisiana.

Nov. 14, 1994.

Louis Leo Robein, Jr., Robein, Urann & Lurye, Metairie, LA, for plaintiff.

Walter W. Christy, Kullman, Inman, Bee, Downing & Banta, P.C., New Orleans, LA, Terence G. Connor, David M. DeMaio, Morgan, Lewis & Bockius, Miami, FL, for defendant.

## ORDER AND REASONS

CLEMENT, District Judge.

This matter is before the Court on defendant's Motion for Summary Judgment. The issue underlying the case is whether defendant violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), when it terminated plaintiff's employment on November 2, 1992. Defendant argues that it is entitled to judgment as a matter of law because plaintiff has not stated two elements of a *prima facie* case under the ADA. Defendant also argues that plaintiff is precluded from recovery under the ADA because he made false statements on his employment application and would have been terminated if such statements had been known to his employer. For the following reasons, the Court finds that summary judgment is not appropriate at this time.

█ The ADA prohibits an employer from "discriminat[ing] against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). To state a prima facie case under the ADA, plaintiff must prove that (1) that he suffers from a "disability"; (2) that he is a "qualified individual"; and (3) that he suffered an adverse employment action because of his disability. *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993).[1] Defendant argues that, as a matter of law, plaintiff (1) did not suffer from a "disability"; (2) was not a "qualified individual" because no reasonable accommodation was available; and (3) may not recover because of the "after-acquired evidence" doctrine. The Court will address these issues in turn.

### A. Did Plaintiff Suffer From A "Disability"?

The term "disability" under the ADA means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [the plaintiff]; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Defendant argues that

plaintiff can point to no evidence that he suffered from such a disability. Plaintiff counters that even if he did not have a cognizable disability, he fits into the third of these categories because he was regarded by the person who terminated his employment, Mr. Kelly LeBeouf, as having an impairment substantially limiting one or more of his major life activities.

The Court finds that the record contains sufficient evidence to present a genuine issue of fact as to whether plaintiff qualifies as "disabled" under the ADA. Defendant points to the fact that plaintiff was diagnosed with an "Adjustment Disorder with Mixed Emotional Features," and devotes considerable effort to arguing that such a mental disorder is not a "disability" under the ADA because of its temporary nature. Plaintiff disputes neither the factual conclusion regarding his diagnosis nor the legal conclusion regarding the status of his diagnosed illness under the ADA. Instead, plaintiff argues that defendant was not aware of this diagnosis prior to terminating him, but instead regarded him as suffering from depression or another mental disorder which would qualify as a protected disability, thus bringing him within the scope of the third part of the ADA's definition.

█ Depression and other mental illnesses can qualify as disabilities for purposes of the ADA. *See Doe v. Region 13 Mental Health—Mental Retardation Commission*, 704 F.2d 1402 (5th Cir.1983); 42 U.S.C. § 12102(2)(A) (defining disability as a "physical or mental impairment"). Thus, if LeBeouf regarded plaintiff as suffering from depression or another mental illness that he believed substantially limited a major life activity, plaintiff had a disability under the ADA. *See Partlow v. Runyon*, 826 F.Supp. 40, 45 (D.N.H.1993) ("the proper test is whether the impairment, *as perceived,* would affect the individual's ability to find work across the spectrum of same or similar jobs"). The record clearly presents a ques-

---

1. Although *Chandler* was decided under the Rehabilitation Act of 1973, the Fifth Circuit and other courts have noted the similarities between the Rehabilitation Act and the ADA, and have borrowed precedent and analysis from one in interpreting the other. *See, e.g., Chandler*, 2 F.3d at 1391.

tion of fact on this issue. LeBeouf testified to his understanding that plaintiff was suffering from "acute anxiety and depression." LeBeouf Deposition at 19, 25. He accepted this diagnosis, interpreted it in layman's terms, and did not question Stradley's doctors about its symptoms or effects. *Id.* at 19, 22–23. Based on his "general life experiences," he believed that Stradley's condition made him potentially violent and hostile in the workplace. *Id.* at 41–42. A reasonable jury could interpret this belief as a conclusion that Stradley was not fit to work in any job. Thus a genuine issue of fact exists as to whether LeBeouf regarded Stradley as having a disability for the purposes of the ADA.[2]

B. *Was Plaintiff a "Qualified Individual"?*

■ Defendant's second argument is that Stradley was not a "qualified individual." A "qualified individual" is someone who can perform the essential functions of his job with or without reasonable accommodation. *Bradley v. University of Texas M.D. Anderson Cancer Center,* 3 F.3d 922, 924 (5th Cir.1993). As plaintiff admits, regular attendance at work is an essential function of most jobs. *See, e.g., Carr v. Reno,* 23 F.3d 525, 529–30 (D.C.Cir.1994); *Jackson v. Veterans Administration,* 22 F.3d 277, 278–79 (11th Cir.1994). It was an essential function of Stradley's job. LeBeouf Deposition at 74. The evidence is undisputed that at the time he was terminated, Stradley had been diagnosed as unable to return to work for an indefinite period of time. *See* Physician's Return to Work Recommendations, signed by Richard Cicinelli, M.D., LeBeouf Deposition Exhibit 6. It is clear that without accommodation, Stradley was unable to perform an essential function of his job.

■ The question thus becomes whether Stradley was able to perform his job "with reasonable accommodation." An employer is not required to provide an accommodation that is unreasonable or would impose an "undue hardship." 42 U.S.C. § 12112(b)(5)(A). Stradley suggests that it

would not have been unreasonable for CVI to structure paid and unpaid leave to accommodate his condition. He also points to the possibility of transferring him to the less stressful position of cable installer, a job he had proven himself capable of performing in the past. Although LeBeouf testified that leaving Stradley in the position but on extended leave was not reasonable and would have imposed an undue hardship on CVI, LeBeouf Deposition at 46–52, he also testified that neither he nor members of defendant's personnel department seriously considered transferring Stradley to back to a cable installer job. The record indicates that Stradley's diagnosis of total disability was based on stress inherent in the supervisory position, and that he might have been able to return to work immediately and perform satisfactorily if transferred to the position of cable installer. Such positions were available at the time Stradley was terminated. LeBeouf Deposition at 91. Genuine issues of fact exist as to (1) whether Stradley was capable of performing the essential functions of his job with such an accommodation; and (2) whether such an accommodation would have been reasonable for CVI under the circumstances.

C. *The "After–Acquired Evidence" Doctrine*

Finally, defendant argues that plaintiff is not entitled to recover for unlawful termination because he stated falsely on his employment application that he had a high school diploma. Defendant asserts that plaintiff would not have been hired if he had been truthful on his application, and that his employment would have been terminated if his misrepresentation had become known to the company later. The federal Courts of Appeal are split on the issue of whether such after-acquired evidence of misconduct bars or merely limits recovery under the ADA and other employment discrimination laws. *Compare Summers v. State Farm Mutual Automobile Insurance Co.,* 864 F.2d 700

---

**2.** Defendant's fear that accepting plaintiff's "regarded as" argument would result in the Court countenancing an absurdity is unfounded. Stradley does not arguably qualify as disabled under the ADA simply because he claims to have an impairment preventing him from performing his job. He arguably qualifies as disabled because his supervisor arguably accepted his diagnosis and treated him as someone who he believed was unable to function in any workplace.

**445**

(10th Cir.1988) (after-acquired evidence of an employee's misrepresentation bars recovery for a discriminatory discharge when the employer would not have hired, or would have fired, the employee had it known of the misconduct); *Dotson v. United States Postal Service,* 977 F.2d 976 (6th Cir.1992) (same); *Washington v. Lake County,* 969 F.2d 250 (7th Cir.1992) (same) *with Wallace v. Dunn Construction Co.,* 968 F.2d 1174, 1181 (11th Cir.1992) (after-acquired evidence of misconduct limits but does not bar recovery). The Fifth Circuit has not addressed the issue, though district courts within the Fifth Circuit have followed *Summers* and its progeny. *See Kuchler v. Bechtel Corp.,* 855 F.Supp. 177 (E.D.Tex.1994); *Redd v. Fisher Controls,* 814 F.Supp. 547 (W.D.Tex.1992). The Supreme Court has granted *certiorari* to resolve the conflict. *McKennon v. Nashville Banner Publishing Co.,* — U.S. —, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994).

Important considerations support both sides of the issue. On one hand is the concern, expressed by the *Summers* court, that an employee should not benefit from his or her misrepresentation. On the other hand are the fears, described by the *Wallace* court, that an employer might feel no need to avoid discriminatory conduct when it can escape liability by rummaging through an employee's background after the fact to create "legitimate" reasons for firing and that an employee who has been discriminated against and sues will be placed in a worse position than he would have been if he had not been a member of a protected class or engaged in protracted opposition to an unlawful employment practice. The latter concern is relevant in the present case, as CVI found out about Stradley's educational background only during a deposition in the lawsuit. Although the Court is sympathetic to the concerns expressed by the Eleventh Circuit in *Wallace,* it chooses to follow the weight of authority leaning unmistakably toward the *Summers* approach.

Of course, this is not the end of the matter. In order to reduce the incentives for employers to discriminate on the theory that they can later justify their actions through after-acquired evidence, courts applying the *Summers* bar to recovery have placed a heavy burden on employers to demonstrate that the employee in question would not have been hired, or would have been fired, had the misconduct been discovered. *See, e.g., Welch v. Liberty Machine Works, Inc.,* 23 F.3d 1403 (8th Cir.1994). Self-serving affidavits by employees of the defendant have been held insufficient to sustain motions for summary judgment on this issue. *Id.* at 1405–06. The Court finds that plaintiff is entitled to a jury determination of whether he would not have been hired, or would have been fired, had his misrepresentations been known to CVI.

In short, there remain several material issues of fact for trial, including (1) whether plaintiff's supervisor "regarded him as disabled" under the ADA; (2) whether plaintiff was qualified to perform his job with accommodation, and, if so, whether reasonable accommodations were available to the company; and (3) whether plaintiff would not have been hired or would have been fired if misrepresentations on his employment application had become known to his supervisors. Defendant's motion for summary judgment is DENIED.