**Sidney P. SANDERS, Jr.,
Plaintiff–Appellant,**

v.

**ARNESON PRODUCTS, INC.,
Defendant–Appellee.**

No. 95–15349.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 13, 1996.

Decided Aug. 6, 1996.

**1352**

Daniel Ray Bacon, San Francisco, California, for plaintiff-appellant.

Brian T. McMillan, Robert J. Wilger, Littler, Mendelson, Fastiff, Tichy & Mathiason, San Jose, California, for defendant-appellee.

C. Gregory Stewart, Gwendolyn Young Reams, Vincent J. Blackwood, Karen M. Moran, Equal Employment Opportunity Commission Office of General Counsel, Washington, D.C., for amicus curiae Equal Employment Opportunity Commission.

Before: ALARCON, BEEZER and RYMER, Circuit Judges.

Opinion by Judge BEEZER; Dissent by Judge RYMER.

BEEZER, Circuit Judge:

Plaintiff Sidney P. Sanders appeals the district court's summary judgment in favor of defendant Arneson Products, Inc. Sanders sought relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* for his termination while he was on leave for a cancer-related psychological disorder. Sanders' appeal is timely, and we have jurisdiction under 28 U.S.C. § 1291. Because Sanders was not "disabled," as that term is defined in the ADA and its implementing regulations, we affirm.

**I**

Sanders began working for Arneson in January, 1990, as Manager–Production Control. In June, 1990, he became Arneson's Production Manager, and remained in that position for the remainder of his employment with Arneson. In October, 1991, Arneson consolidated two facilities. Subsequently, Arneson began experiencing severe production problems. Arneson hired a new Director of Manufacturing, Robert Carlson, and embarked upon a process of company-wide restructuring. Some jobs were eliminated, and Sanders' duties were modified.

In October, 1992, Sanders was diagnosed with bladder cancer and underwent surgery. He was on leave from October 26, 1992 until December 2, 1992. Though he was originally scheduled to return to work on November 30, he did not return until December 2. He worked part-time from December 2 until December 19.

On December 18, 1992, Dr. Carlton Purviance, a licensed psychiatrist, diagnosed Sanders as suffering a psychological reaction to his cancer. Dr. Purviance informed Arneson that he had advised Sanders to take time off work, and gave an estimated "release" date of March 1, 1993.

While Sanders was on leave, other existing Arneson employees assumed Sanders' responsibilities. Sanders received full pay during his initial leave for cancer surgery, during the period he worked part-time and during the December 19–April 5 period. For a portion of the December 19–April 5 period, he received disability compensation from the State of California; Arneson reduced his salary accordingly so that his net compensation remained at the same level.

The parties disagree as to when the decision was made to terminate Sanders. Sanders argues that the decision was made in December, 1992, shortly after he went on leave for his psychological difficulties. Arneson contends that the decision was made in late February, 1993.

On February 26, 1993, Carlson phoned Sanders. Sanders contends that he was told during the phone conversation that "he had already been replaced." Arneson contends that the purpose of the phone call was to ascertain whether Sanders would be re-

turning to work on March 1, and that upon receiving news that Sanders would not be returning on that date, Carlson informed Sanders that he could not be guaranteed a job upon his return.

On March 2, Dr. Purviance sent a note to Arneson, informing them that Sanders would be able to resume work on April 5, with no further psychological restrictions or complications. Arneson received the note around March 9. Arneson continued to pay Sanders' full salary until April 5, but never allowed him to return to work.

Sanders filed suit on February 16, 1994, seeking damages under the ADA, 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and under state tort law. The district court granted Arneson's motion for summary judgment. Sanders timely filed a notice of appeal, and raises only the ADA and state-law violation of public policy issues on appeal.

## II

■ We review *de novo* grants of summary judgment. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

## A

The district court granted summary judgment without comment or explanation. Arneson's motion for summary judgment argued principally that Sanders was not a "qualified individual with a disability" and therefore could not establish a prima facie case of disability discrimination under the ADA.

The ADA's general rule against discriminating against people with disabilities is found in 42 U.S.C. § 12112(a):

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.[1]

■ To state a prima facie case under the ADA, a plaintiff must prove that he is a qualified individual with a disability who suffered an adverse employment action because of his disability. *See Stradley v. Lafourche Communications, Inc.,* 869 F.Supp. 442, 443 (E.D.La.1994) (borrowing Rehabilitation Act standard); *Smith v. Upson County, Ga.,* 859 F.Supp. 1504, 1514–1515 (M.D.Ga.1994), *aff'd,* 56 F.3d 1392 (11th Cir.1995); *Sawinski v. Bill Currie Ford, Inc.,* 866 F.Supp. 1383, 1386 (M.D.Fla.1994). *See also Collings v. Longview Fibre Co.,* 63 F.3d 828, 832 (9th Cir.1995) (noting the similarity of the ADA and Rehabilitation Acts and the extent to which Congress intended that interpretation of the ADA be informed by Rehabilitation Act precedent), *cert. denied,* —— U.S. ——, 116 S.Ct. 711, 133 L.Ed.2d 666 (1996).

The issue in this case is whether Sanders was a qualified individual with a disability. Ancillary to that issue is whether the leave he requested was a reasonable accommodation. Because we determine that Sanders was not a qualified individual with a disability, we do not reach the issue whether the requested leave was reasonable accommodation.

■ In determining whether Sanders was a qualified individual with a disability, we need only address whether Sanders' temporary psychological impairment qualifies as a disability under the ADA. Sanders argued before the district court and conceded at oral argument before us that his cancer and psychological impairment were two distinct alleged disabilities. Only the psychological im-

---

1. "Covered entities" include employers with, in this case, more than 25 employees. 42 U.S.C. §§ 12111(2), 12111(5)(A). "Discriminate" is given a relevant definition in 42 U.S.C. § 12112(b)(5)(A):

   not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

pairment is at issue in this case. It lasted from December 19, 1992 to April 5, 1993, and had no long-term residual effects beyond April 5, 1993. Sanders requested leave for the entire period of his psychological impairment. We address only the application of the ADA to this case, where the impairment is of relatively short duration and leave is requested for the entire period of impairment. We do not address whether a person is qualified for employment under the ADA if he or she requires a short period of leave as accommodation for a long-term or permanent disability.

■ We consider here whether Sanders' psychological impairment is a "disability," as that term is used in the ADA.[2] Section 12102(2)(A) defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of the individual." The term "substantially limits" is defined in 29 CFR § 1630.2(j). Section 1630.2(j)(2) lists three factors to consider in determining whether an individual is substantially limited in a major life activity: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Several courts have held that a temporary injury with minimal residual effects cannot be the basis for a sustainable claim under the ADA. *Blanton v. Winston Printing Co.*, 868 F.Supp. 804, 808 (M.D.N.C. 1994) (holding that a temporary injury with minimal residual effects cannot be a basis for an ADA claim); *Rakestraw v. Carpenter Co.*, 898 F.Supp. 386, 390 (N.D.Miss.1995) (same); *Johnson v. Foulds, Inc.*, 1996 WL 41482 (N.D.Ill.1996) (holding that temporary mental depression does not meet the requirements of a disability). The appendix to the regulations states, "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs,

sprained joints, concussions, appendicitis, and influenza." 29 CFR Part 1630 App., § 1630.2(j).

Sanders' temporary psychological impairment, from December 19, 1992 to April 5, 1993, with no residual effects after April 5, 1993, was not of sufficient duration to fall within the protections of the ADA as a disability.

### B

*Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 878–879 (9th Cir.1989), *cert. denied*, 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990) is not to the contrary. In that case we held that, under a Washington state handicap discrimination law, a chronic sufferer of acute cluster migraines was "handicapped." We further held that it is "reasonable accommodation" to require an employer to grant leaves of absence during episodes of migraines so that the employee could seek medical treatment.

*Kimbro* involved temporary periods of leave for episodic outbreaks of an underlying permanent condition. In this case, by contrast, Sanders suffered a single episode of a temporary condition, and the leave requested was for the entire duration of the condition. It is consistent with *Kimbro* to hold that Sanders' psychological disorder was not a disability. Because we do not here reach the issue of reasonable accommodation, it is unnecessary to consider further that aspect of our holding in *Kimbro*.

### III

■ Sanders also appeals the district court's grant of summary judgment on his claim under state law for tortious discharge in violation of public policy. Arneson argues that this claim falls with Sanders' ADA claim. *See Jennings v. Marralle*, 8 Cal.4th 121, 135–136, 32 Cal.Rptr.2d 275, 876 P.2d 1074 (1994) (no public policy claim against employers who have not violated the law). We agree.

---

2. We note that "disability" is susceptible to a broad variety of definitions and usages. Arneson has repeatedly characterized Sanders' psychological impairment as a "total disability." This is not a concession that Sanders was "disabled" under the ADA. The ADA defines "disability" with specificity as a term of art. Hence, a person may be "disabled" in the ordinary usage sense, or even for purposes of receiving disability benefits from the government, yet still not be "disabled" under the ADA. The converse may sometimes be true as well.

## IV

We hold that Sanders' temporary psychological impairment was not a disability under the ADA. Arneson's request for attorney's fees under 42 U.S.C. § 12205 is denied.

AFFIRMED.

RYMER, Circuit Judge, dissenting:

It may be that my colleagues are absolutely correct, that Sanders's psychological impairment associated with his cancer is not a "disability" under the ADA because it wasn't bad enough and didn't last long enough, but I have trouble finding support for (or against) this conclusion in the record. There is no evidence about whether the condition was cured, was in remission, or was just sufficiently controlled that Sanders could return to work on April 5. Nor does the record shed light on whether Sanders's psychological disorder, which was associated with his cancer, is so related that it is—or must be treated as—a "disability" because his cancer was a "disability," or is so distinct that it shouldn't be. Likewise, the record is unclear as to whether the cancer, or the psychological impairment that followed in its wake, may recur. In short, we know next to nothing about its characteristics. For this reason, it seems to me that the record has to be more fully developed before it can be concluded as a matter of law that Sanders suffered no disability for purposes of the Act.

Both parties agree that Sanders was disabled in the sense that he could not work at all between December 19 and April 5. Equally, both agree that Sanders did work, and worked well, before his leave for cancer surgery October 26, 1992; no one quibbles about *that* leave. He came back, on a part-time basis, for a couple of weeks before receiving leave with full pay for his psychological reaction to the cancer. To me, this focuses the question on whether extending the psychological disability leave beyond March 1 was a reasonable accommodation to enable Sanders to perform the essential functions of his job.

Because there is evidence that Sanders wasn't terminated until after Dr. Purviance wrote Arneson that Sanders could return to work April 5, I think there are triable issues whether terminating Sanders instead of extending his leave was discriminatory. While it may turn out that continuing to give Sanders a full, paid leave was not reasonable or was an undue hardship, *see Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 879 n. 10 (9th Cir.1989) (questioning whether second leave is required if first leave proves unsuccessful), *cert. denied*, 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990); *August v. Offices Unlimited, Inc.*, 981 F.2d 576 (1st Cir.1992) (no violation when employee given several leaves is still unable to do job at time of termination); *Myers v. Hose*, 50 F.3d 278 (4th Cir.1995) (suggesting that reasonable accommodation does not require the employer to wait indefinitely for medical conditions to be corrected, rather that it must be construed as that which "presently" or "in the immediate future," enables employee to perform the job), I cannot say that Sanders has failed to show that it is at least "plausible" that continuing his leave would have given him an opportunity to get through the psychological episode and return to work. *Kimbro*, 889 F.2d at 879.

I would, therefore, reverse and remand for further proceedings.