IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-20172
_____


DRUSILLA C. JOHNSON; ET AL.,

                                                    Plaintiffs,

DRUSILLA C. JOHNSON,

                                          Plaintiff-Appellant,

                          versus

EXXON COMPANY, USA,

                                          Defendant-Appellee.

_____

          Appeal from the United States District Court
               for the Southern District of Texas
                        (H-96-CV-1955)
_____

                      June 21, 1999

Before REAVLEY, JOLLY, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

     In this case, the plaintiff, Drusilla Johnson, was released
from employment by Exxon as part of a reduction in force.  She sued
Exxon, and a district court granted summary judgment in Exxon's
favor.  On appeal, the plaintiff argues that the district court
erred in granting summary judgment on her Americans with
Disabilities Act ("ADA") and Age Discrimination in Employment Act
("ADEA") claims.  She also argues that the district court erred in

_____

     [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

denying her motion to compel the production of information she did not obtain in discovery. Because we find no merit to any of these arguments, we affirm the district court.

I

On March 14, 1994, Drusilla Johnson's employment was terminated by Exxon after the sale of its Credit Card Center made necessary a reduction in force of some four hundred jobs. The reduction, called a "Special Program of Severance Allowances" ("SPOSA"), was accomplished by first offering a voluntary severance package and then, when not enough workers volunteered to leave the company, terminating additional employees. Employees were selected for termination based solely on their job performance rankings for 1993 (based on a review of the employee's performance in 1992). Exxon applied a straight cut--all employees with a ranking in the bottom ten percent[1] were let go. According to Exxon, the average age of employees in the Controller's Department is 41 and the average age of terminated employees was 42.

Johnson was ranked in the bottom eight percent in her 1993 performance rankings. This low ranking was a result of an incident that occurred in 1992. In April of 1991, Johnson was transferred from the Title Section (where she had apparently performed reasonably well) to Owner Communications and Payables section where she worked as a Debit Coordinator. Her job essentially involved

---

[1]Exxon did not terminate employees with over 25 years service to the company.

collecting overpayments made by Exxon. In that job, she apparently was not able to keep up with all of her accounts. Instead of calling this to the attention of her supervisor, however, she "fudged" the numbers so that it was not apparent that some of her accounts were not up to date. In 1992, she was transferred to a new supervisor, Peggy Giammelle, who detected the inconsistencies in Johnson's reports. Giammelle ultimately had to bring in six people to deal with the backlog of work created by Johnson's failure to keep up with some $1.16 million worth of debits. During her 1993 evaluation, Giammelle explained to Johnson that her low performance rating primarily reflected the concern over her attempted covering up of the backlog. In addition, Giammelle also explained that the evaluation also reflected dissatisfaction from clients with whom Johnson worked. In 1993, Johnson was transferred back to the Title Section. However, because of the timing of the SPOSA, 1994 evaluations for 1993 work performance were not considered.

At the time Johnson was laid off, she was a 46-year-old, white female. In addition, she had undergone a hysterectomy in December of 1992 for the removal of what turned out to be a benign tumor. Johnson alleges that she suffered hormonal imbalances throughout 1992 due to this complication. Johnson further alleges that in December of 1993, after she had been notified that she would likely loose her job as a result of the Credit Card Center sale, Johnson requested that Exxon reevaluate her performance review in the light

3

of her health complications at the time.  Exxon denies that Johnson made such a request.

Johnson sued Exxon for violations of the ADA, the ADEA, Title VII (gender discrimination), and the Employee Retirement Income Security Act.  During the course of litigation, a dispute apparently arose regarding Exxon's production of statistics related to the termination decision.  Johnson's interrogatories contained the following interrogatory:

> 22. Please identify in detail the names, positions/titles, and addresses of all individuals involved in the decision to layoff Plaintiff, and state what type of analysis was referred to by such individuals including reference to all statistical, numerical, computer generated and other source material relied upon by the decision to place the Plaintiff in the pool of employees to be terminated.

Johnson's document requests included the following request:

> 28.  All data used for analysis or statistical comparison in print, computer tape, disks or other magnetic media used by Defendant to determine what employees would be laid off resulting from the sale of Defendant's credit card operations to G.E. Capital including data showing breakdowns by age disabling condition(s), gender and performance.

Exxon denied that it had relied on or generated any statistics related to the termination decision.

After the close of discovery on July 1, 1997,  Exxon filed a motion for summary judgment on August 1, 1997.  In that motion, Exxon noted that the average age of the Controller's Department was 41 and the average age of workers who were terminated from the Controller's Department was 42.  After a hearing in November 1997, in which the district court ruled that it would grant summary

4

judgment on three claims and was likely to grant summary judgment on the fourth, Johnson moved for a motion to compel discovery. Johnson's motion was filed over five months after the close of discovery and sought the statistics used by Exxon in their summary judgment motion.

On January 23, 1998, The district court entered a memorandum and order granting summary judgment on all claims. In that motion, the district court denied Johnson's motion to compel as untimely. Johnson filed a timely notice of appeal with respect to the ADA and ADEA claims.

II

The district court granted summary judgment to the defendants on the ADA claims on four different grounds. First the district court concluded that because Johnson did not have a permanent disability, she did not qualify as disabled. Second, the district court held that there was no evidence that Johnson was stigmatized for apparently having cancer. Third, the district court held that her request for accommodation, that Exxon reassess a performance evaluation, was not a request for a reasonable accommodation under the ADA. Finally, the court noted that Johnson only made a request after discovering that her job may be in danger.

We resolve this issue on the basis of the court's first holding. The court relied on the following language in Burch v. Coca-Cola Co., 119 F.3d 305 (5th Cir. 1997):

> We have previously rejected attempts to transform temporary afflictions into qualifying disabilities. See

5

Rogers v. International Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996); Rakestraw v. Carpenter Co., 898 F.Supp. 386, 390 (N.D.Miss. 1995); see also Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997); Sanders v. Arneson Products, Inc., 91 F.3d 1351, 1354 (9th Cir. 1996), cert. denied, --- U.S. ----, 117 S.Ct. 1247, 137 L.Ed.2d 329 (1997); 29 C.F.R. § 1630.2(j), App. (1996) ("[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities.").

The district court noted that Johnson provided no evidence that her medical problem was a permanent disability.

On appeal, Johnson makes no attempt to address this case, or explain why her condition is a permanent disability. Apart from noting that there is no such requirement in the specific language of the ADA and stating that similar conditions have been qualified as disabilities by other courts (but not the Fifth Circuit), she makes no attempt to address this serious flaw in her case. After a careful consideration of the arguments raised in the briefs and on appeal and a review of the record, we conclude that the district court did not err in granting summary judgment on this basis.

III

In granting summary judgment on the ADEA claim, the district court noted that this case involved a reduction in force, not a case where an employee was replaced by another employee. In order to prevail on an ADEA claim based on a reduction in force, Johnson had to show:

(1) that [s]he is within the protected age group; (2) that [s]he has been adversely affected by the employer's decision; (3) that [s]he was qualified to assume another position at the time of the discharge; and (4) "evidence,

6

circumstantial or direct, from which a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue."

Nichols v. Loral Vought Systems Corp., 81 F.3d 38, 41 (5th Cir. 1996) (quoting Amburgey v. Corhart Refractories Corp., Inc., 936 F.2d 805, 812 (5th Cir. 1991)). Under the McDonnell Douglas burden-shifting framework, Johnson would either have to show direct discrimination based on age (which she does not) or she would have to make out a prima facie case in which Exxon could then rebut by articulating a legitimate, non-discriminatory reason for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Bauer v. Albemarle Corp., 169 F.3d 962, 966 (5th Cir. 1999).

The district court held that Johnson failed to make out a prima facie case of age discrimination. The district court further held that, even if Johnson had not failed, Exxon asserted a legitimate non-discriminatory reason for releasing her. In this case, Exxon based its decision regarding which employees to release entirely on the 1993 performance evaluation. For that year, there was a very good reason why Johnson's evaluation was one of the lowest-- she had failed to perform her work and then attempted to cover up her deficiency.

On appeal, Johnson does not address Exxon's legitimate reason for terminating her. Instead, she focuses on her prima facie case of discrimination. She argues that she introduced testimony that Exxon targeted older employees for termination in its evaluation

and ranking system. Regardless of whether Johnson has made out a prima facie case, she has completely failed to address the legitimate reason advanced by Exxon for terminating her. Because she cannot rebut that reason, her ADEA claim fails.

## IV

Johnson finally argues that the district court erred in denying her motion to compel discovery. The district court based its decision on Johnson's undue delay in filing a motion to compel. We review this determination for abuse of discretion. In the light of the interrogatories and discovery requests, it is apparent that Johnson failed to ask for the information she sought. Her requests asked for statistics prepared in relation to the decision to terminate. She did not ask for statistics regarding the ages of employees in the department and of the employees who were terminated. If she had, she could easily have calculated the statistics introduced by Exxon herself--she would simply have had to average the age of the employees who were released and the age of the employees in the Controller's Department. We therefore hold that the district court did not abuse its discretion in denying Johnson's request.

## V

We consider the district court's opinion to be extremely thorough and well considered in this case. Our opinion today offers little more than an affirmance of that opinion. Johnson failed to make out the necessary elements of either an ADA or an

ADEA claim.  In addition, the district court quite correctly denied Johnson's motion to compel.  Her motion was filed after the close of discovery and the information she sought was not information she requested during discovery.  We therefore AFFIRM the rulings of the district court.

A F F I R M E D.