Jerry D. WITT, Plaintiff,

v.

NORTHWEST ALUMINUM COM-
PANY, an Oregon corpora-
tion, Defendant.

No. CR 99–1715–BR.

United States District Court,
D. Oregon.

March 21, 2001.

Eric J. Fjelstad, Smith & Fjelstad,
Gresham, OR, for Plaintiff.

David H. Wilson, Michael McClory, Bul-
lard, Smith, Jernstedt & Harnish, Port-
land, OR, for Defendant.

## OPINION AND ORDER

BROWN, District Judge.

This employment case comes before the
Court on Defendant's Motion for Summary
Judgment (# 18). For the following rea-
sons, the Motion is **DENIED**.

### *THE COMPLAINT*

Plaintiff worked for Defendant from
1987 until December 1998 or January 1999.
In June 1998, Plaintiff was diagnosed with
"claudication, a permanent condition that
results in vascular insufficiencies in both

legs."[1] Plaintiff claims his doctors ordered him not to walk more than 50 to 100 feet without taking a rest. Plaintiff further alleges Defendant was aware Plaintiff suffered from this condition. Defendant promoted Plaintiff to the position of "utility crew lead man" at about the same time Plaintiff began experiencing claudication.

Plaintiff alleges Defendant placed him on involuntary medical leave the day after he gave Defendant a doctor's note restricting his walking. Plaintiff claims he informed Defendant he did not want to be on leave and wanted accommodation with a Hyster or Cushman cart, which are vehicles similar to a small golf cart. Plaintiff also suggested Defendant return him to his old spader operator job, which allowed Plaintiff to sit while performing his duties.

Plaintiff claims Defendant never acted upon, discussed, or acknowledged Plaintiff's accommodation suggestions and, moreover, refused to allow Plaintiff to return to work. In October 1998, Defendant allegedly suggested Plaintiff apply for Social Security disability benefits. Plaintiff began receiving benefits in December 1998. Plaintiff asserts Defendant then "quit paying plaintiff any disability leave benefits and partial pay, thus terminating plaintiff's employment."

Plaintiff's Complaint includes two claims for relief.[2] First, Plaintiff alleges Defendant violated the Americans with Disabilities Act (ADA) by terminating Plaintiff's employment either because of Plaintiff's actual disability or because Defendant regarded Plaintiff as disabled. Plaintiff also claims Defendant violated the ADA by failing to reasonably accommodate Plaintiff's disability.

Plaintiff brings his second claim for relief under Oregon state disability law. Plaintiff alleges Defendant violated Or. Rev.Stat. § 659.436 because Plaintiff's disability played a substantial role in Defendant's decisions not to accommodate Plaintiff's impairments and to terminate Plaintiff's employment.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I. Summary Judgment Standard**

Under Fed.R.Civ.P. 56:

Summary judgment should be granted if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. The underlying substantive law governing the claims determines whether or not it is material. Reasonable doubts as to the existence of material factual issue[s] are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party. There must be enough doubt for a "reasonable trier of fact" to find for

---

1. Plaintiff's physician, Dr. Hamilton, testified more precisely that Plaintiff has vascular disease and claudication is a symptom of that disease. Claudication is pain and discomfort that results when muscles do not receive enough oxygen because of inadequate blood supply.

2. The Complaint also includes a Third Claim for Relief in which Plaintiff alleges Defendant terminated Plaintiff's employment to avoid paying Plaintiff retirement benefits. Plaintiff indicated he was dismissing this ERISA claim in his opposition to Defendant's Motion for Summary Judgment. At oral argument, the Court verified Plaintiff did not wish to pursue his ERISA claim and entered a minute order that confirmed Plaintiff's voluntary dismissal of that claim.

plaintiffs in order to defeat the summary judgment motion.

*Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000) (citations omitted).

## II. *Defendant's Objections to Plaintiff's Declaration*

Plaintiff submitted a declaration in opposition to Defendant's Motion for Summary Judgment. In its reply brief, Defendant contends several statements in Plaintiff's declaration contradict his deposition testimony and, therefore, should not be considered. The Court finds it unnecessary to resolve the question whether portions of Plaintiff's declaration are a sham because other evidence in the record is sufficient to overcome Defendant's Motion for Summary Judgment, as discussed below. The Court has not considered the disputed portions of Plaintiff's declaration in deciding Defendant's motion.

## III. *Defendant Is Not Entitled to Summary Judgment on Plaintiff's ADA and State–Law Disability Claims*

### A. There Is Evidence in the Record from Which a Factfinder Could Conclude Plaintiff Was Disabled

Title I of the ADA prohibits an employer from discriminating against a "qualified individual with a disability." 42 U.S.C. § 12112(a).

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. . . .

42 U.S.C. § 12111(8). The term "disability" is defined in several ways.[3] For purposes of Defendant's summary judgment motion, the pertinent definition of disability is "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. § 12102(2)(A).

The term "substantially limits" is not defined by statute, "but 'substantially' suggests 'considerable' or 'specified to a large degree.' " *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). To determine whether an impairment "substantially limits" a major life activity, a court should consider:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). *See Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1353 (9th Cir.1996) (citing regulation), *cert. denied*, 520 U.S. 1116, 117 S.Ct. 1247, 137 L.Ed.2d 329 (1997).

■ Defendant argues Plaintiff's vascular condition was temporary and, therefore, was not a disability. This argument fails for two reasons. First, not all temporary impairments are excepted from the definition of "disability." If no temporary condition could render a person disabled, it would make no sense for a court to consider the "duration or expected duration of the impairment" to determine whether the impairment is a disability. Rather, only temporary impairments of short duration

---

**3.** The ADA defines "disability" as follows:

> The term "disability" means, with respect to an individual—
>
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

with little or no lasting effect generally fail to qualify as disabilities. *See* 29 C.F.R. Pt. 1630, App. *See also Sanders,* 91 F.3d at 1353.

Second, the undisputed evidence does not establish Plaintiff's vascular condition was temporary. Dr. Hamilton does not identify the probable duration of Plaintiff's condition in his June 22, 1998, note. Rather, Dr. Hamilton states only that Plaintiff "has vascular insufficiency of both legs and is unable to walk more than 50 feet without resting for 10–15 minutes." Dr. Hamilton testified during deposition that he did not know how long Plaintiff's walking limitation would last when he wrote the June 1998 note. The limitation could become either more or less severe over time. Dr. Hamilton reported it was "undetermined" whether Plaintiff's working restrictions would be permanent in a September 1998 "Physician's Statement of Disability" he completed in association with Plaintiff's medical leave of absence. In December 1998, six months after he first diagnosed Plaintiff's vascular condition, Dr. Hamilton opined that Plaintiff's walking restriction would not be permanent. He still reported, however, it was "undetermined" how long the restriction would last. Dr. Hamilton also testified the vascular insufficiency in Plaintiff's legs would be present to some extent for the rest of his life, although his ability to walk possibly could improve.

Defendant places great significance on the fact that Dr. Hamilton checked a box labeled "temporary" rather than a box labeled "permanent" when he described the duration of Plaintiff's disability on Plaintiff's application for a disabled parking permit. A factfinder could determine from this evidence that Plaintiff's walking restriction would not last his entire life. A factfinder would not be compelled, however, to find Plaintiff's walking restriction was so short-lived that his vascular condition did not qualify as a disability. In fact, a rational factfinder could conclude from the evidence that Plaintiff's vascular condition and associated walking restriction were not so short in duration that Plaintiff was not disabled.

■ The real question posed by Defendant's summary judgment motion is whether Plaintiff has proffered sufficient evidence to show his vascular condition "substantially limited" his ability to perform the major life activity of walking. Defendant argues it is entitled to summary judgment on this issue because Plaintiff has produced no evidence that shows his ability to walk was substantially limited compared to that of the average person. Defendant relies on an Eleventh Circuit case that held an ADA plaintiff who could not walk more than 40 to 50 yards failed to establish a *prima facie* case he was disabled because he offered no evidence of how far the average person can walk. *Maynard v. Pneumatic Prods.,* 233 F.3d 1344 (11th Cir.2000). The *Maynard* court noted EEOC regulations define an impairment that "substantially limits" a major life activity to be an impairment that significantly restricts "the condition, manner or duration under which the *average person in the population* can perform that same major life activity." *Id.* at 1347 (emphasis added). The court inferred from this regulation that plaintiffs must produce direct evidence of the abilities of the "average person" to overcome a defense motion for summary judgment:

> A trier of fact may be the appropriate party to determine whether an ADA claimant is significantly restricted in the performance of a major life activity. However, the claimant must present sufficient evidence of the significant restriction before the court may turn the issue over to the trier of fact. This evidence must include information regarding the abilities of the average person in the general population. Maynard proffered

no evidence on this point, and thus failed to make out a prima facie case.

The simple proposition we clarify today—that plaintiffs must present comparator evidence to demonstrate their substantial limitations—has been largely overlooked in ADA cases. We take pains to highlight this obvious and crucial element in a plaintiff's prima facie case because a review of ADA caselaw demonstrates that plaintiffs are continually failing to present this necessary evidence.

Some courts have seemingly taken judicial notice of the capabilities of the "average person in the general population." To the extent other courts have taken judicial notice of the ADA comparator's capabilities, we disagree with those cases.

*Maynard*, 233 F.3d at 1349 (citations and footnote omitted).

The Ninth Circuit has not required ADA plaintiffs to produce the "average person" evidence the Eleventh Circuit demands. Such a requirement would defy the Ninth Circuit's repeated exhortation that plaintiffs in employment discrimination cases have to produce only minimal evidence to defeat a defendant's motion for summary judgment. *See, e.g., Chuang v. University of California Davis*, 225 F.3d 1115, 1123 (9th Cir.2000). Instead of requiring direct evidence of the abilities of the average person, the Ninth Circuit requires a plaintiff only to put forth some "evidence that she is substantially limited" with respect to a major life activity. *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539 (9th Cir. 1997).

Plaintiff contends "it is a matter appropriate for judicial notice that an average person in the community can walk more than 50 feet, 100 feet or even two blocks without suffering pain and needing a rest." The Court disagrees. The walking ability of the average person is not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). Nonetheless, in appropriate cases factfinders may draw on their own experience to determine whether particular impairments constitute "substantial limitations" of major life activities. This is such a case. Factfinders do not need expert testimony to understand that a person confined to a wheelchair is substantially limited in the major life activity of walking. Factfinders similarly are competent to weigh the evidence about other walking limitations to determine whether those limitations are so substantial that they constitute a disability. Consequently, Defendant is not entitled to summary judgment merely because Plaintiff failed to produce direct evidence of the walking ability of the average person in the general population.

The remaining question is whether there is evidence in the record from which a factfinder could determine Plaintiff is substantially limited in his ability to walk. The Court concludes such evidence is present. First, Dr. Hamilton reported in June 1998 that Plaintiff could walk only 50 feet before he would have to rest for 10 to 15 minutes. Six months later, in December 1998, Dr. Hamilton still said Plaintiff should not walk more than 50 feet without resting. Finally, in his declaration, Plaintiff stated he presently can walk only two city blocks without pain; "then the cramping starts and [he has] to stop." Although this evidence does not compel a finding that Plaintiff was disabled during the last few months he worked for Defendant, it is some evidence from which a factfinder could determine Plaintiff's ability to walk was substantially limited. Consequently, Defendant is not entitled to summary judgment on the ADA claim on the ground Plaintiff is not disabled.[4]

4. The Court need not, and thus does not, reach Plaintiff's alternative argument that he

## B. There Is Evidence in the Record from Which a Factfinder Could Conclude Defendant Failed to Engage in the Interactive Process to Determine Whether Plaintiff's Disability Could Be Reasonably Accommodated

█ Plaintiff also alleges Defendant violated the ADA by not reasonably accommodating Plaintiff's disability when Defendant refused to permit Plaintiff to perform the lead man job with the use of a Hyster or Cushman cart. The ADA "prohibits an employer from discriminating against a qualified individual with a disability by failing to make 'reasonable accommodations to the known physical or mental limitations' of that individual." *Willis v. Pacific Maritime Ass'n,* 236 F.3d 1160, 1164 (9th Cir.2001). The employer and employee must engage in an interactive process to determine whether the employee's disability can be accommodated. *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1111 (9th Cir. 2000). The employer's mandatory duty to participate in the interactive process "is triggered by an employee or an employee's representative giving notice of the employ-ee's disability and the desire for accommodation." *Id.* at 1114. The duty also may be triggered if the employer recognizes the need for accommodation in the absence of a request from the employee. *See id.* at 1112. Employers who fail to engage in the interactive process in good faith "face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." *Id.* at 1116.[5]

█ The undisputed evidence in this case establishes Plaintiff asked his supervisor for permission to perform his lead man job using a Cushman cart in or about September 1998.[6] Defendant then had a duty to engage in an interactive process with Plaintiff to determine whether a reasonable accommodation was possible.[7] Defendant claims it satisfied its duty to accommodate Plaintiff's disability by informing Plaintiff he could bid on other desirable jobs that did not require walking. Defendant also argues Plaintiff's request to use a Hyster or Cushman cart to perform the lead man job would not have been a reasonable accommodation because it would have presented a "direct threat"

---

was disabled for purposes of the ADA because Defendant "regarded" him as having a disability.

5. Defendant cites several cases from other jurisdictions in which courts ruled the employer's duty to provide a reasonable accommodation is not triggered until the employee specifically requests accommodation. *See Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir.1999); *Mole v. Buckhorn Rubber Prods., Inc.,* 165 F.3d 1212, 1217 (8th Cir.), *cert. denied,* 528 U.S. 821, 120 S.Ct. 65, 145 L.Ed.2d 56 (1999); *Crocker v. Runyon,* 207 F.3d 314, 319 (6th Cir.2000); *Rehling v. City of Chicago,* 207 F.3d 1009, 1014 (7th Cir.2000). These cases are not applicable in light of the Ninth Circuit's decision regarding an employer's duty to accommodate in *Barnett.*

6. Plaintiff asserts in his declaration that he requested the cart accommodation much ear-lier, before he accepted the lead man position or started medical leave. Defendant argues Plaintiff's declaration conflicts with deposition testimony in which Plaintiff asserted he did not request the cart accommodation until he already was on leave. The Court does not reach the question whether Plaintiff's declaration statement is a sham because Defendant concedes Plaintiff asked for the cart accommodation in or about September 1998. That request was sufficient to trigger Defendant's duty to engage in the interactive process, and, for purposes of summary judgment, it does not matter whether that duty was triggered at an earlier time.

7. Defendant arguably was required to initiate the interactive process as early as June 23, 1998, when Plaintiff provided the note from Dr. Hamilton that described Plaintiff's walking restrictions because that note put Defendant on notice that some form of accommodation was necessary.

to other employees. *Cf.* 42 U.S.C. § 12113(b) (employers are not required to place disabled individuals in positions where they pose a direct threat to other individuals if the threat cannot be eliminated by reasonable accommodation).

Defendant's second argument inappropriately focuses on whether Plaintiff's requested accommodation would have been feasible. That is not the issue the Court must address at the summary judgment stage. Although an ADA plaintiff ultimately can prevail on a failure to accommodate claim only if he or she proves a reasonable accommodation would have been possible, the plaintiff does not have to provide evidence that the accommodation was feasible to overcome an employer's motion for summary judgment. The purpose of the interactive process is to identify and to develop a reasonable accommodation. If the interactive process did not occur, it is difficult to tell whether accommodation would have been possible:

> The interactive process is the key mechanism for facilitating the integration of disabled employees into the workplace. Employers who reject this core process must face liability when a reasonable accommodation would have been possible. Without the interactive process, many employees will be unable to identify effective reasonable accommodations. Without the possibility of liability for failure to engage in the interactive process, employers would have less incentive to engage in a cooperative dialogue and to explore fully the existence and feasibility of reasonable accommodations. The result would be less accommodation and more litigation, as lawsuits become the only alternative for disabled employees seeking accommodation. This is a long way from the framework of cooperative problem solving based on open and individualized exchange in the workplace that the ADA intended. **Therefore, summary judgment is** available only where there is no genuine dispute that the employer has engaged in the interactive process in good faith.

We hold that employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible. **We further hold that an employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process.**

*Barnett,* 228 F.3d at 1116 (emphasis added; footnote omitted).

In this case, Defendant points to no evidence that it engaged in a meaningful interactive process. Instead, Defendant asserts it told Plaintiff other jobs were available and offered to place bids for him. There is no evidence Defendant engaged in a dialogue with Plaintiff about whether or how his disability could be accommodated in the lead man job even after Plaintiff specifically asked to be returned to that position. Under these circumstances, Defendant cannot prevail at the summary judgment stage despite its offer of evidence that Plaintiff's use of a cart in the lead man job would have been dangerous and could have posed a direct threat to other employees. The evidence that Defendant failed to engage in the interactive process alleviates Plaintiff of the burden of providing evidence of the reasonableness of his proposed accommodation at this stage of the litigation.

Defendant also contends it accommodated Plaintiff by advising him there were other jobs available in Defendant's plant that Plaintiff could perform while sitting. Defendant concludes it was not required to grant Plaintiff's requested accommodation

because it made other jobs available, and Plaintiff did not take advantage of them.

The ADA contemplates that once the employer and employee "have identified and assessed the range of possible reasonable accommodations, ... 'the expressed choice of the applicant shall be given primary consideration unless another effective accommodation exists that would provide a meaningful equal employment opportunity.'" *Barnett*, 228 F.3d at 1115 (quoting ADA legislative history).[8] The EEOC's Interpretive Guidance states reassignment generally should be considered as an accommodation "only when accommodation within the individual's current position would pose an undue hardship." 29 C.F.R. Pt. 1630, App. Moreover, reassignment "may not be used to ... discriminate against employees with disabilities by forcing reassignments to undesirable positions . . . ." *Id.*

Given the EEOC guidelines, the ADA's legislative history, and *Barnett*, Defendant cannot prevail on summary judgment merely because it encouraged Plaintiff to bid on open jobs. Defendant may not rely on reassignment as a form of accommodation when it failed to engage in the interactive process to determine whether Plaintiff's disability could be accommodated in his current job, as Plaintiff desired. In addition, Plaintiff viewed the two vacant positions identified by Defendant as undesirable. One job paid less than the lead man job and the other job involved rotating 12–hour shifts. These positions, therefore, did not necessarily provide employment opportunities equal to Plaintiff's lead man job. Finally, Defendant acknowledges seniority provisions in the company's collective bargaining agreement prevented Defendant from doing anything more than permitting Plaintiff to bid on the jobs: Defendant could not assign Plaintiff to those jobs without going through the bidding process. Merely allowing a Plaintiff to bid on open jobs is not a reasonable accommodation. *Barnett*, 228 F.3d at 1117.[9]

For the reasons discussed above, the Court denies Defendant's Motion for Summary Judgment against Plaintiff's ADA claim. The parties agree the Court's decision on the Oregon state disability claim should mirror the Court's decision on the ADA claim. Accordingly, Defendant's Motion for Summary Judgment on the state-law disability claim also is denied.

### CONCLUSION

Defendant's Motion for Summary Judgment (# 18) is **DENIED**.

IT IS SO ORDERED.

---

8. Defendant cites cases from other jurisdictions in which courts hold disabled employees are not entitled to the accommodation of their choice, but are entitled only to a reasonable accommodation. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir.1997); *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800–01 (6th Cir.1996). The Court declines Defendant's repeated invitation to rely on the law of other jurisdictions rather than on the law of the Ninth Circuit.

9. A company is not required to violate a collective bargaining agreement to accommodate a disabled employee through reassignment. *Willis*, 236 F.3d at 1165. Defendant relies on *Willis* to support its contention it reasonably accommodated Plaintiff when it offered to watch the bid board for Plaintiff and to place a bid for him when the right job was posted. The Court disagrees. *Willis* holds merely that job reassignment is not required when it would conflict with a collective bargaining agreement, but it does not state a bare offer to place a bid constitutes reasonable accommodation.