Roger **MARSH and Frans Merkx, Plaintiffs,**

v.

Stanley K. **BURRELL, a/k/a M.C. Hammer or Hammer; Bustin' Management, Inc.; Bustin' Records, Inc.; Bustin' Productions, Inc.; Bustin' Touring, Inc.; and Bustin' Management/Capitol Records–Thorn EMI Joint Venture, Defendants.**

No. C–92–1292 MHP.

United States District Court,
N.D. California.

Oct. 26, 1992.

Thomas M. Frieder, Kenney, Burd, Knutson & Markowitz, San Francisco, Cal., Robert F. Brodegaard, Thacher Proffitt & Wood, New York City, for plaintiffs.

George M. Belfield, Mark D. Peterson, Manatt, Phelps, Phillips & Kantor, Los Angeles, Cal., for defendants Stanley K. Burrell, M.C. Hammer, Bustin' Management, Inc., Bustin' Records, Inc., Bustin' Productions, Inc., Bustin' Touring, Inc.

## OPINION

PATEL, District Judge.

This is a diversity action alleging claims for assault and battery, intentional infliction of emotional distress, negligent hiring and negligent infliction of emotional distress. Plaintiffs Roger Marsh and Frans Merkx are, respectively, citizens of the United Kingdom and of the Netherlands. Defendant Stanley K. Burrell a/k/a Ham-

mer or M.C. Hammer ("Burrell") is an internationally-known "rap" performer who is a citizen of California. The remaining defendants, except Bustin' Management/Capitol Records–Thorn EMI Joint Venture [1] (collectively, "business defendants"), are California corporations with their principal places of business in California.

The matter is currently before the court on the parties' submissions regarding whether the law of the Kingdom of the Netherlands or of California governs the amount and types of damages which plaintiffs may recover if they prevail in this action. For the reasons set forth below, the court finds that, under applicable choice of law principles, California law governs damages in this action.

## BACKGROUND

The complaint contains the following allegations. On or about April 3, 1991, plaintiffs and one Andrew Jackson were approached by a group of men outside the American Hotel on the Liedseplein in Amsterdam, the Netherlands (the "Hotel"). Complaint ¶ 12. This group consisted of Burrell and his agents and/or employees ("employees"), who are also agents and/or employees of the business defendants. *Id.* ¶ 13. After Burrell and his employees shouted threats to plaintiffs, additional Burrell employees emerged from the hotel and, led by Burrell, punched and beat plaintiffs and Andrew Jackson, who had attempted to protect plaintiffs. *Id.* ¶¶ 14–18.

On the next day, after talking with the Amsterdam police, plaintiffs and Jackson returned to the Hotel to talk to the manager about the alleged assault of the previous day. *Id.* ¶ 19. At the Hotel, Burrell and several of his employees again attacked plaintiffs. *Id.* ¶¶ 20–24. In the course of this attack, Burrell struck Marsh in the jaw with a glove-like device resembling "brass knuckles" while two employees held Marsh down. *Id.* ¶¶ 22–23. This blow fractured Marsh's jaw and required an extended hos-

---

**1.** Plaintiffs have informed the court that, to date, they have been unable to locate and serve defendant Bustin' Management/Capitol Records–Thorn EMI Joint Venture, and defendants state upon information and belief that no such entity exists. Accordingly, all references herein to "defendants" or "business" defendants exclude this particular party.

pital stay. *Id.* ¶ 24. In the course of the same attack, Merkx was physically assaulted, battered and thrown out into the street by other Burrell employees. *Id.*

Plaintiffs further allege that Burrell and his employees were dangerous and had violent propensities. *Id.* ¶ 35. According to the complaint, the business defendants knew or reasonably should have known of these tendencies, but negligently hired and failed to restrict the activities of Burrell and the employees. *Id.* ¶ 36–37.

Based on these allegations, the complaint states its claims for assault and battery, negligent hiring, and negligent and intentional infliction of emotional distress. Plaintiffs pray for general damages, medical and incidental expenses, compensation for lost wages and earning capacity, and punitive damages.

LEGAL STANDARD

In a diversity action, a federal court sitting in California must apply California choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Strassberg v. New England Mutual Life Ins. Co.*, 575 F.2d 1262, 1263 (9th Cir.1978). The choice of law principles of the forum state must be applied even when diversity, as in this action, is based on foreign citizenship. *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975).

California courts decide choice of law questions by means of the "governmental interests" analysis. *In re Yagman*, 796 F.2d 1165, 1170 (9th Cir.1986), *cert. denied*, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987). This choice of law analysis embodies the presumption that California law applies unless the proponent of foreign law can show otherwise. *Browne v. McDonnell Douglas Corp.*, 504 F.Supp. 514, 517 (N.D.Cal.1980) ("Under the government interest analysis, California will apply its own law unless it is shown that there is a compelling reason to displace forum law."); *Kasel v. Remington Arms Co.*, 24 Cal.App.3d 711, 731, 101 Cal. Rptr. 314 (1972). In general, California will apply its own law, unless a party timely invokes the law of a foreign jurisdiction. *Hurtado v. Superior Court*, 11 Cal.3d 574, 581, 114 Cal.Rptr. 106, 522 P.2d 666 (1974). When a litigant invokes foreign law, he or she must "demonstrate that the [foreign] rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply...." *Id.; Beech Aircraft Corp. v. Superior Court*, 61 Cal.App.3d 501, 522, 132 Cal.Rptr. 541 (1976). The burden of proving that a foreign jurisdiction's law applies is therefore on the party invoking the foreign rule of decision. *McGhee v. Arabian American Oil Co.*, 871 F.2d 1412, 1422 (9th Cir.1989).

California's governmental interests analysis involves a three step process. *Liew v. Official Receiver and Liquidator*, 685 F.2d 1192, 1196 (9th Cir.1982).

First, the court must determine whether the substantive laws of California and the foreign jurisdiction differ on the issue before it. *Id.*

Second, if the laws do differ, then the court must determine what interests, if any, the competing jurisdictions have in the application of their respective laws. *Id.; Hurtado*, 11 Cal.3d at 581, 114 Cal.Rptr. 106, 522 P.2d 666 (the forum court determines "whether either or both states have an interest in applying their policy to the case" (quoting Herma Hill Kay, *Comments on Reich v. Purcell*, 15 U.C.L.A. L.Rev. 584, 585 (1968))). To determine what interest a jurisdiction has in the application of its law, the forum court undertakes an examination of the policies underlying the particular law and asks whether those policies will be served by applying that law in the action before the forum. *Hurtado*, 11 Cal.3d at 581, 114 Cal.Rptr. 106, 522 P.2d 666.

When only *one* of the jurisdictions has an interest in having its law applied, then there is only a "false conflict" and the law of that jurisdiction applies. *Liew*, 685 F.2d at 1196; *Hurtado*, 11 Cal.3d at 580, 114 Cal.Rptr. 106, 522 P.2d 666; *Hernandez v. Burger*, 102 Cal.App.3d 795, 799, 162 Cal. Rptr. 564 (1980). Because California's gov-

ernmental interests analysis embodies a presumption in favor of applying forum law, when *neither* jurisdiction has an interest in the application of its rule of law, California applies its own law. *See Hurtado*, 11 Cal.3d at 581, 114 Cal.Rptr. 106; 522 P.2d 666 ("even in cases involving foreign elements, the court should be expected, as a matter of course, to apply the rule of decision found in the law of the forum" (quoting Brainerd Currie, *Selected Essays on Conflicts of Laws*, 183 (1963))). In such cases, known among scholars of governmental interest analysis as "unprovided for" cases, "neither law would serve the purposes behind that law [and the forum applies] its own law for the sake of convenience." Gregory E. Smith, *Choice of Law in the United States*, 38 Hastings L.J. 1041, 1047 (1987); *see also* Herma Hill Kay, *The Use of Comparative Impairment to Resolve True Conflicts: An Evaluation of the California Experience*, 68 Cal.L.Rev. 577, 611–12 (1980).

 It is only when *both* jurisdictions have a policy interest in the application of their laws that a "true conflict" exists. *Liew*, 685 F.2d at 1196. California courts then proceed to the third step in California's governmental interests analysis, known as the "comparative impairment" test. *Id.* If and when a court reaches this step, it must determine which jurisdiction's interest would be most impaired if its policies were subordinated to those of the other jurisdiction. *Id.; see also Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 161, 148 Cal.Rptr. 867, 583 P.2d 721 (1978); *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 320, 128 Cal. Rptr. 215, 546 P.2d 719 (1976); *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484–86 (9th Cir.1987).

## DISCUSSION

### I. *Different Damages Rules*

The first step in California's conflict of laws analysis is to determine whether the substantive laws of the relevant jurisdictions actually differ. The parties agree that the law of the Netherlands permits tort causes of action similar in substance to those in the complaint. Declaration of H.J. Bunjes ("Bunjes Dec.") ¶ 3; Memorandum Opinion of Paul Cronheim ("Cronheim Op.") ¶¶ 10–12; Declaration of Robert J. Funcke ("Funcke Dec.") ¶ 2. However, Netherlands law and California law differ markedly with respect to the types and amount of damages that a tort plaintiff may recover.

California law allows recovery without limitation for all damages proximately caused by a tort, California Civil Code § 3333, as well as for punitive damages. Cal.Civ.Code § 3294. Under the law of the Netherlands, while a plaintiff may recover compensatory damages and damages for pain and suffering, a plaintiff is not entitled to more than "out-of-pocket" damages for medical expenses and lost wages. Bunjes Dec. ¶¶ 4, 6; Cronheim Op. ¶¶ 19–20; Funcke Dec. ¶ 2. In addition, Netherlands law does not allow punitive or exemplary damages. Bunjes Dec. ¶ 5; Cronheim Op. ¶ 19; Funcke Dec. ¶ 2.

### II. *Governmental Interests*

The next question under California's choice of law analysis is whether the Netherlands has any policy interest that may justify applying its damages law instead of California law in this action. Defendants argue that the Netherlands' limitation of damages rules should apply for four reasons.

First, they contend that the Netherlands has a "strong interest in preventing [any] double recovery" against defendants that may result from application of California's "collateral source" rule in this action and from a possible subsequent action under the Netherlands' subrogation law by plaintiffs' insurers. Defendants' Memorandum of Points and Authorities Re: Choice of Law, at 7–8.[2]

---

**2.** Defendants' first argument is essentially as follows: under California's collateral source rule, plaintiffs would be entitled to recover damages for their medical expenses and other

costs which may be covered by their insurance; at the same time, plaintiffs' insurers would be entitled to seek recovery from defendants in a Netherlands court for any sums paid to plain-

Second, at oral argument, defendants argued the apparent converse of their first argument, asserting that the subrogation rights of the Government of the Netherlands and plaintiffs' insurers would be jeopardized if the collateral source rule were applied in this case.

Third, defendants also maintained at oral argument that the Netherlands has an interest in preventing the recovery of punitive damages by its resident plaintiffs.

Finally, defendants maintain that California has no interest in applying its liberal damages rules to defendants' conduct in the Netherlands. The court finds none of these arguments sufficient to sustain defendants' burden of overcoming the strong presumption in favor of applying California law.

### A. The Netherlands' Interest

#### 1. *Limiting Damages of Non–Resident Defendants*

 With one exception, California forum courts employing governmental interests analysis to determine whether a foreign jurisdiction's stricter recovery rules should apply over California's more liberal rule have held that a jurisdiction's only interest in having its damages limitation rules applied is to protect its *resident* defendants from excessive financial burdens or from exaggerated claims. *Hurtado,* 11 Cal.3d at 580–81, 114 Cal.Rptr. 106, 522 P.2d 666; *Reich v. Purcell,* 67 Cal.2d 551, 556, 63 Cal.Rptr. 31, 432 P.2d 727 (1967). Damages limitations are "intended to protect defendants from large verdicts," not to "limit the compensation of plaintiffs." *In re Aircrash in Bali, Indonesia,* 684 F.2d 1301, 1307 (9th Cir.1982) (citing *Hurtado,* 11 Cal.3d at 583–84, 114 Cal.Rptr. 106, 522 P.2d 666). The interest in protecting defendants from excessive damages has been described by the California Supreme Court as "primarily local". *Reich,* 67 Cal.2d at 556, 63 Cal.Rptr. 31, 432 P.2d 727.

Thus, foreign states are generally presumed to have absolutely no interest in reducing recovery by their residents against non-resident tortfeasors. The courts have observed that a foreign country with strict limitation of damages rules has "no interest in denying full recovery to its residents injured by non-[resident] defendants," *Hurtado,* 11 Cal.3d at 581, 114 Cal.Rptr. 106, 522 P.2d 666, and that "countries or states where recovery would be less than by applying California law ... have no interest in limiting recovery of their resident plaintiffs against a nonresident...." *In re Paris Air Crash,* 399 F.Supp. 732, 745 (C.D.Cal.1975); *see also Browne,* 504 F.Supp. at 518 ("Nor do the states of domicile of the various plaintiffs which may have ... restrictive rules governing wrongful death recovery have an interest in displacing California's liberal rules on the issue of recoverable damages.").

The exception to this trend is the California Fourth District Court of Appeal's 1980 decision in *Hernandez v. Burger,* 102 Cal. App.3d 795, 162 Cal.Rptr. 564, which is cited by defendants in support of their arguments. In *Hernandez,* the court considered California resident defendants' argument that a Mexican limitation of damages rule should apply in a personal injury action brought against them by a Mexican plaintiff for an injury sustained when defendants' vehicle struck the plaintiff in Mexico. The court held that Mexico had an interest in applying its limitation of damages rule to non-residents; that California had absolutely no interest in applying its more liberal recovery rules to an accident that occurred outside of California; and that, accordingly, the Mexican rule should apply. *Hernandez,* 102 Cal.App.3d at 804, 162 Cal.Rptr. 564.

In certain respects, *Hernandez* is similar to the case at bar. The plaintiff in *Hernandez* was a foreign national allegedly injured by California residents in a foreign country. Here, Marsh and Merkx are both

---

tiffs. Thus, application of California damages law, specifically the collateral source rule, would expose defendants to the risk of paying two awards for the same damages. Defendants argue that the Netherlands has a strong interest in preventing such a double recovery against defendants.

residents of foreign countries, the United Kingdom and the Netherlands. As in *Hernandez*, all defendants before this court are California residents. However, unlike *Hernandez*, not all of the acts giving rise to this action necessarily occurred in a foreign country. As discussed more fully below, some of the conduct giving rise to the negligent hiring cause of action apparently occurred in California.

Despite these surface similarities, there is an important distinction which renders the holding of *Hernandez* inapposite. The Court of Appeal in *Hernandez* specifically took judicial notice of the fact that "a major, if not the major, industry in Baja California [the Mexican province where the alleged tort occurred] is tourism emanating from the United States, particularly California." *Id.* at 802, 162 Cal.Rptr. 564. The court then concluded that "[f]ostering tourism in Baja California is ... a legitimate interest of Mexico and the application of Mexico's limited damages law to nonresident motorists might well advance that interest." *Id.* The *Hernandez* court identified no other rationale for its departure from previous California Supreme Court decisions holding that a jurisdiction's only policy interest in limiting damages is to protect its residents from excessive financial burdens. *See Hurtado*, 11 Cal.3d at 582–83, 114 Cal.Rptr. 106, 522 P.2d 666; *Reich*, 67 Cal.2d at 556, 63 Cal.Rptr. 31, 432 P.2d 727.

Defendants cite to no similar type of "tourism" or tourist-protection interest on the part of the Netherlands. Moreover, this court is troubled by the *Hernandez* court's notion that Mexico's interest in promoting tourism is so great as to preclude its injured citizens from obtaining the fullest recovery possible against foreign tortfeasors.[3] *Cf. In re Paris Air Crash*, 399

F.Supp. at 745 ("[s]urely the interests of [foreign countries which limit damages] would be satisfied so long as there is a *full* recovery [by plaintiffs who are residents of those countries] for 'such damages as may be just,' as California law allows"). The *Hernandez* court reached its conclusion by referring merely to "common knowledge" and without citing to any authority or to any evidence for the facts of which it takes judicial notice. *See* 102 Cal.App.3d at 802, 162 Cal.Rptr. 564. Its novel use of judicial notice and its rather perverse logic regarding Mexico's interest vis-a-vis its citizens and careless tourists render *Hernandez* of dubious authority. The court therefore concludes that the Netherlands' business or tourism interests in this case, if any, are not so paramount as to preclude an injured Dutch plaintiff from obtaining full recovery.

Thus, in accordance with the weight of California authority on the issue, the court finds that the Netherlands' only interest in having its damages rules applied is in protecting its own resident defendants. Since none of the defendants in this action is a Netherlands resident, the Netherlands has absolutely no interest in having its damages rules applied to them. For this reason, defendants' argument that the Netherlands has a "strong interest" in preventing a possible double recovery against defendants in the event of a suit against defendants under the Netherlands' subrogation law is unconvincing.[4] Moreover, there is nothing in the record to suggest that any subrogation action against defendants is pending or even contemplated.[5]

### 2. *Protecting Subrogation Rights*

Defendants also argue that the subrogation rights of the Netherlands Government and of plaintiffs' insurers will be jeopardized if this court applies the collat-

---

**3.** One choice of law commentator, apparently recognizing Hernandez's departure from previous California authorities, has referred to *Hernandez* as a "strange decision". Smith, 38 Hastings L.J. at 1045, 1057 n. 74.

**4.** In any event, the California Supreme Court has made it clear that the collateral source rule does not require that a tortfeasor "pay doubly for his wrong—once to the injured party and

again to reimburse the plaintiff's collateral source [the insurer]." *Helfend v. Southern Cal. Rapid Transit Dist.*, 2 Cal.3d 1, 11 n. 15, 84 Cal.Rptr. 173, 465 P.2d 61 (1970). Thus, to the extent that defendants might be exposed to a double recovery, they would not be without remedies under California law.

**5.** *See* next section.

eral source rule and awards plaintiffs damages for medical expenses or lost wages which may duplicate insurance payments or government benefits paid to plaintiffs in the Netherlands. Therefore, they assert that the Netherlands has an interest in not having California's collateral source rule applied in this action.

The factual basis of this argument is, of course, that *future* actions *may* be brought against defendants under the Netherlands' subrogation law. However, this premise is completely hypothetical and unsupported by the record before this court. The only evidence that defendants offer in support of their subrogation argument is a brief statement in paragraph 6 of their Netherlands counsel's declaration to the effect that insurers and "the authorities" have rights of subrogation against defendants generally for medical bills paid for, and disability payments to, plaintiffs generally. Bunjes Dec. ¶ 6. Defendants provide absolutely no evidence that plaintiffs in this action are insured, or that any medical bills or disability payments have been or will be incurred, let alone that the Netherlands Government, an insurer or any other party has a pending or a potential claim against defendants under the Netherlands' subrogation law.[6]

Even if such subrogation claims actually exist, defendants fail to articulate a convincing reason why an insurer or the Government of the Netherlands would have its subrogation rights irreparably jeopardized if this court applies the collateral source rule. Defendants asserted at oral argument that a court trying a subrogation action against defendants would be reluctant to rule in favor of the party making the claim if this court, applying California's

collateral source rule, awards damages that duplicate benefits paid to plaintiffs by insurers or by the Netherlands Government. The reason is that the subrogation claim would unjustly subject defendants to paying twice for the same harm, once to plaintiffs and again to the party bringing the subrogation claim. Therefore, the subrogation claims would be in jeopardy.

This argument is flawed because it fails to consider avenues by which an insurer or the Netherlands Government may recover directly from *plaintiffs* any sums that it cannot recover from defendants. For example, defendants have failed to show that in the event plaintiffs recover damages in this action which duplicate benefits paid to them by their insurers or by the Netherlands Government, the insurer or the Netherlands Government will be unable to recover such benefits by placing a lien on plaintiffs' damages award in this court, or by bringing an action for the subrogated benefits against plaintiffs in the Netherlands or elsewhere. Therefore, even if parties with subrogation rights cannot prevail on their claims against *defendants*, defendants have not established that such parties would be left without adequate remedies.

The court accordingly finds that defendants have not met their burden of demonstrating that the Netherlands has an interest in having its damages rules applied as a means of protecting the subrogation rights of its government or of insurers.

### 3. *Limiting Punitive Damages*

 Finally, defendants' attempt to distinguish the Netherlands' interest in its rules against punitive damages from its

---

**6.** Indeed, it appears that plaintiffs may not even be eligible under Netherlands law for the kinds of benefits which they hypothetically may have collected and which, hypothetically, may have given rise to the Dutch Government's subrogation claims in this case. According to defendants at oral argument, the Dutch Government's subrogation claims would be based on benefits paid to plaintiffs under the Netherlands' Disability Act. *See* Bunjes Dec. ¶ 6. However, according to defendants' own expert declaration, the Netherlands' Disability Act is "only applicable to employees." *Id.* Plaintiffs' counsel stated un-

equivocally at oral argument that both plaintiffs are self-employed, and thus, not "employees". Moreover, plaintiff Marsh is a British, not Dutch, resident. Defendants have provided no evidence that the Dutch Disability Act provides benefits to foreigners who do not reside in the Netherlands, simply because they are injured in the Netherlands. Defendants have not explained how the Dutch Disability Act would have provided benefits to plaintiffs, much less given subrogation rights to the Dutch Government, under these circumstances.

interest in other types of damages limitations runs completely against the grain of applicable California choice of law authority. Defendants have provided no authority for their proposition that a jurisdiction's interest in a limitation on punitives is in limiting residents plaintiffs' recovery rather than, as held by the majority of California courts, in protecting its resident defendants from excessive damages.

For all of the foregoing reasons, the court finds that the Netherlands has no interest in having its damages limitation rules applied in this action.[7]

### B. California's Interest

When different claims implicate different interests on the part of a jurisdiction, separate applications of the governmental interests analysis are required. *McGhee*, 871 F.2d at 1422 (citing *Beech Aircraft Corp.*, 61 Cal.App.3d at 518, 132 Cal.Rptr. 541).

Defendants' argument that California has no interest in applying its liberal damages rules in this action is only correct as to the claims based entirely on acts which occurred in the Netherlands. California has a deterrent interest in applying its liberal recovery rules to its own resident defendants, but this interest extends only to tortious conduct which occurs within California's borders. *Hurtado*, 11 Cal.3d at 583–84, 114 Cal.Rptr. 106, 522 P.2d 666; *Reich*, 67 Cal.App.2d at 556, 63 Cal.Rptr. 31, 432 P.2d 727; *Hernandez*, 102 Cal. App.3d at 800–01, 162 Cal.Rptr. 564 (citing *Howe v. Diversified Builders, Inc.*, 262 Cal.App.2d 741, 745–46, 69 Cal.Rptr. 56 (1968)). The acts giving rise to the assault and battery and intentional and negligent infliction of emotional distress claims all occurred in the Netherlands. Thus, with respect those claims, the court finds that California has no cognizable interest.

However, as to the negligent hiring claim, the court finds that California has a deterrence interest in applying its damages rules to the extent that any relevant hiring was done in California. The complaint does not specifically allege the place or places where the negligent hiring took place. However, at oral argument, defendants conceded that at least some, if not all, of the employees who took part in the incidents giving rise to this action were hired by defendants in California. Thus, if defendants were negligent in hiring those individuals, application of California's liberal recovery principles might well serve to deter any such negligence by defendants and others in the future. *See Hurtado*, 11 Cal.3d at 583–84, 114 Cal.Rptr. 106, 522 P.2d 666.

### III. *California Damages Law Applies*

Having determined that the Netherlands has no interest in the application of its damages law with respect to the negligent hiring claim and that California has such an interest, the court concludes that California damages law applies. Because at least some relevant hiring was done in California, this claim presents a "false con-

---

7. Judge Schwarzer's ruling in *Browne*, 504 F.Supp. at 518–19, does not counsel a different result. In *Browne*, the court considered whether it should impose California's rule of joint and several liability on a defendant that had manufactured an airliner that crashed in Yugoslavia due both to alleged design defects by the defendant and to criminal negligence by a Yugoslav air traffic controller not a party to the action. *Id.* Yugoslavia followed a rule of proportionate liability, whereby each defendant is held liable only for the damages it causes. *Id.* at 518. The court held that Yugoslavia's rule should be imposed instead of California's because imposition of California's joint and several liability rule would impair Yugoslavia's interest in protecting foreign business firms doing business in that country from suffering disproportionate liability for injuries caused *by Yugoslav parties. Id.* at 519. California, by contrast, had no interest in applying its own rule because the accident occurred outside its borders. *Id.* at 518.

No facts alleged or arguments before the court in this action suggest that the Netherlands has an interest similar to Yugoslavia's in *Browne*. There is absolutely no allegation or evidence that anyone other than Burrell, the business defendants, and their agents and/or employees caused the injuries complained of. No Netherlands residents are implicated in the acts which allegedly caused plaintiffs injuries. The Netherlands therefore cannot have any interest in preventing recovery against nonresident defendants on grounds similar to those supporting Yugoslavia's interest in *Browne*.

flict" situation. Only California has an interest in the application of its law, the Netherlands has no interest and, therefore, California law should apply. *See Hurtado*, 11 Cal.3d at 580, 114 Cal.Rptr. 106, 522 P.2d 666. As to the other claims, for the reasons explained above, they present an "unprovided for" scenario and California law applies as a matter of convenience. *See* Smith, *supra,* 38 Hastings L.J. at 1047; Kay, *The Use of Comparative Impairment ...,* 68 Cal.L.Rev. at 611–12. Because at most only California has an interest in having its damages law applied in this action, the court need not reach the third, "comparative impairment", step of California's choice of law analysis.

The fact that California has a cognizable interest in applying its damages principles as to only one of the claims in the complaint does not preclude this court from applying the same damages principles with respect to the other causes of action in the complaint. This is true for two reasons.

First, it would be highly anomalous if defendants were held subject to full recovery under California law for injuries caused by their negligence (the negligent hiring), but not for their intentional acts (the assault and battery and the intentional infliction of emotional distress).

More importantly, although California has *no* interest in the application of its damages rules as to the three claims based completely on conduct that allegedly occurred in the Netherlands,[8] under governmental interests analysis, California damages rules still apply to those claims. The reason is that the Netherlands also has

absolutely no interest in having its damages rules applied. In light of California's strong presumption in favor of applying its own law, *see Hurtado*, 11 Cal.3d at 581, 114 Cal.Rptr. 106, 522 P.2d 666, California rules apply.[9]

 The burden is on the proponent of a foreign law to show that the foreign jurisdiction's interest in having its law apply is greater than California's interest in the application of its law. *McGhee*, 871 F.2d at 1422. "California will decline to apply its own law to a case brought in California only if it is shown that another state has a greater interest. ..." *In re Aircrash in Bali*, 684 F.2d at 1307. Obviously, if neither jurisdiction has any interest in the application of its law, the interests are equal and California law applies.

## CONCLUSION

For the foregoing reasons, the court concludes that California's damages principles govern any recovery that plaintiffs may obtain in this action.

IT IS SO ORDERED.

---

**8.** These are the assault and battery, intentional infliction of emotional distress and negligent infliction of emotional distress claims.

**9.** The Oregon Supreme court decided an "unprovided for" case involving an issue comparable to the one at bar in *Erwin v. Thomas*, 506 P.2d 494 (1973). In *Erwin*, a man who was a resident of Washington was injured in Washington by a truck driven by an Oregon resident and owned by an Oregon corporation. *Id.* at 494–95. The injured man's wife sued the Oregon defendants in Oregon court for loss of consortium, a cause

of action not recognized under Washington law. *Id.* at 495. Oregon law, on the other hand, recognized such an action. *Id.* In determining which law should apply, the court applied Oregon's modified version of governmental interests analysis and found that neither state had an interest in having its rule applied. *Id.* at 496. The court then held that where neither state had an interest, "an Oregon court [would do] what comes naturally and appl[y] Oregon law." *Id.* at 496–97. This court finds that California's choice of law principles require the same result.