Coufal ABOGADOS;  Eric Coufal,
Plaintiffs–Appellants,

v.

AT&T, INC.;  Lucent Technologies
Inc., Defendants–Appellees.

No. 98–56988.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 3, 2000

Filed Aug. 2, 2000

Lance Orloff, Grant, Genovese & Baratta, Irvine, CA, for plaintiffs-appellants.

William W. Oxley, Melissa C. Lin, Orrick, Herrington & Sutcliffe LLP, Los Angeles, CA, for defendants-appellees.

Before: DAVID R. THOMPSON, FLETCHER, and FISHER, Circuit Judges.

FISHER, Circuit Judge:

Eric Coufal and his law firm, Coufal Abogados (collectively "Coufal"), appeal the district court's grant of summary judgment in favor of appellees AT & T Corp. ("AT & T") and Lucent Technologies, Inc. ("Lucent") on Coufal's claim of tortious interference with a contract. The district court held that the law of Jalisco, Mexico applied; that Mexican law did not recognize the tort of interference with a contract; and that to the extent Coufal's allegations were cognizable as a claim for illicit behavior under Mexican law, the claim was barred by the two year statute of limitations. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. We hold that the district court correctly found that Mexican law applied, and that Coufal has waived his argument that the Mexican statute of limitations period has not expired.

## FACTS

In January 1990, AT & T Productos de Consumo de Mexico S.A. de C.V. ("Productos") contracted with Avanti Constructora ("Avanti") to construct a factory for Productos in Guadalajara, Mexico. Avanti's performance was secured by $5 million in bonds. Extremely unsatisfied with the quality of Avanti's work, Productos terminated Avanti in May 1991. At this point, Avanti had been paid $9 million out of the total contract amount of $11 million. The factory was completed using other contractors at an additional expense of $4 million, the extra $2 million allegedly being necessary to correct Avanti's mistakes. Productos hired Coufal to provide legal services and to initiate an arbitration proceeding against Avanti to recover damages. Coufal and Productos had a contingency fee arrangement under which Coufal would receive any amount recovered from Avanti in excess of $400,000. The arbitration proceeding against Avanti resulted in a $7.8 million award to Productos.

Because of the high amount of the arbitration award, Coufal and Productos renegotiated their contract to make it more equitable. Under this new contract, Coufal would receive payment only upon collection of the arbitration award or settlement with Avanti and would receive approximately half of the collected amount. In addition, Productos agreed that it would not unilaterally revoke Coufal's authority to enforce and collect the arbitration award, that it would not settle with Avanti without Coufal's consent and that the contract would not terminate until the final settlement of the disputes between Avanti and Productos. Just before the new contract was executed, the First Civil Court sitting in Guadalajara declared the arbitration award invalid due to procedural irregularities. Consequently, Coufal needed to appeal that decision successfully in order to enforce the award and get paid under the contract.

In September 1993, Avanti purchased ads in Mexican newspapers setting forth its position in the Avanti/Productos dispute and denouncing Productos. In response to this negative publicity directed at an AT & T subsidiary, Santiago Guitierrez, president of AT & T Mexico, AT & T's main Mexican subsidiary and the person responsible for representing AT & T's overall interest in Mexico, began expressing to Productos and to AT & T his displeasure with the entire arbitration dispute. Eventually, Lee Cutcliff, a vice-president in AT

& T's legal department based in Basking Ridge, New Jersey, assembled a team to investigate the controversy and directed the team to "take appropriate action, fix it, and get it straightened out." All of the team's investigative efforts occurred in Mexico. During the investigation, AT & T determined that Coufal's interests conflicted with AT & T's overall interest in Mexico—AT & T's objective was to get this matter resolved in a way that was positive for AT & T, but it saw Coufal as being mostly concerned about the arbitration award. In addition, AT & T had some concerns about Coufal's methods. Eventually, Cutcliff decided that Coufal should no longer serve as lead counsel for Productos. Thereafter, Luis Gomez Sanchez, Productos' legal representative in Mexico, directed a Mexican notary public to execute a revocation of Coufal's power of attorney.

In August 1994, the Federal Circuit Court of Jalisco overturned the First Civil Court's invalidation of the arbitration award and ordered its enforcement. AT & T soon decided, however, that Productos' collecting the arbitration award was not in AT & T's best interests, in terms of its entire Mexican presence. According to Coufal, this strategy completely disregarded the Coufal/Productos contract and damaged him when AT & T permitted the $5 million in performance bonds to expire. Because the arbitration award has not been collected, Coufal currently is not entitled to receive compensation under the contract.

Coufal sued appellees on November 25, 1996 in Los Angeles County Superior Court, alleging, in part, tortious interference with his contract with Productos. Appellees removed the case to the U.S. District Court for the Central District of California on diversity grounds. There, appellees argued that Mexican law applied, that the only claim Coufal's complaint arguably covered was one for "illicit behavior" and that the statute of limitations had run on that claim. The district court granted summary judgment to appellees, and Coufal appealed.

## DISCUSSION

### I. Choice of Law

A district court's decision concerning the appropriate choice of law is reviewed de novo. *See Waggoner v. Snow, Becker, Kroll, Klaris & Krauss,* 991 F.2d 1501, 1505 (9th Cir.1993). In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Ledesma v. Jack Stewart Produce, Inc.,* 816 F.2d 482, 484 (9th Cir.1987).

California applies a three-step "governmental interest" analysis to choice-of-law questions. *See Hurtado v. Superior Court,* 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666, 669 (1974); *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727, 730 (1967); *see also McGhee v. Arabian American Oil Co.,* 871 F.2d 1412, 1422 (9th Cir.1989). First, the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction. *See Liew v. Official Receiver and Liquidator,* 685 F.2d 1192, 1196 (9th Cir.1982). Second, if the laws do differ, the court must determine whether a "true conflict" exists in that each of the relevant jurisdictions has an interest in having its law applied. *Id.* "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied." *McGhee,* 871 F.2d at 1422. On the other hand, if more than one jurisdiction has a legitimate interest, "the court must move to the third stage of the analysis, which focuses on the 'comparative impairment' of the interested jurisdictions. At this stage, the court seeks to identify and apply the law of the state whose interest would be the more impaired if its law were not applied." *Id.* (internal quotation marks omitted).

Coufal argues that New York law should apply to his claim against appellees for their alleged tortious interference with his contract with Productos. AT & T argues that the district court correctly determined that the law of Jalisco, Mexico applies.

### A. Do the Laws of Mexico and New York Differ?

The parties agree that the laws of New York and Mexico differ. Specifically, New York recognizes a claim for tortious interference, whereas Mexico does not.

### B. "True Conflict" Analysis: Do Both New York and Mexico have an Interest in Applying Their Laws in this Case?

#### 1. Mexico's Interest

Relying primarily on *Hurtado*, Coufal argues that Mexico has no interest in applying its law to limit recovery by its citizens. *Hurtado* involved a wrongful death action filed by Mexican plaintiffs against a California defendant regarding an automobile accident that occurred in California. 522 P.2d at 668. Mexico placed a monetary limit on recovery in wrongful death cases, whereas California limited recovery solely by the concept of "just compensation." *Id.* at 669. The court held that "[t]he interest of a state in a tort rule limiting damages for wrongful death is to protect defendants from excessive financial burdens or exaggerated claims." *Id.* at 670. Because the plaintiffs and not the defendants were the Mexican citizens, the court held that Mexico had no interest in applying its law: "Mexico has no defendant residents to protect and has no interest in denying full recovery to its residents injured by non-Mexican defendants." *Id.*

Unlike *Hurtado*, the complained-of conduct in this case took place primarily, if not entirely, in the foreign jurisdiction, Mexico. While some decisions may have been made in the United States, they were carried out in Mexico. A Mexican notary public revoked Coufal's power of attorney in Mexico. The legal services contract with which appellees allegedly interfered was a Mexican contract, governed by Mexican law, to be performed completely in Mexico. Although the situs of the injury is no longer the sole consideration in California choice-of-law analysis, California courts have held that, "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *Hernandez v. Burger*, 102 Cal.App.3d 795, 802, 162 Cal. Rptr. 564 (1980); *see also McGhee*, 871 F.2d at 1425 ("[I]t seems certain that Saudi Arabia has some legitimate interest in seeing that Saudi law determines the consequences of actions within its borders causing injury to people who reside there."). It is nonsensical to suggest that Mexico has no interest in regulating conduct that affects contracts made in Mexico.

One federal district court has applied *Hurtado*'s rule regarding damages limitation laws to cases where the tortious conduct occurred in the foreign jurisdiction. *See Marsh v. Burrell*, 805 F.Supp. 1493 (N.D.Cal.1992). In *Marsh*, Dutch plaintiffs sued California defendants in California for an assault and battery that occurred in the Netherlands, and negligent hiring that occurred in California. The court in *Marsh* held that all of the claims were governed by California's more liberal damages rules, because none of the defendants were Dutch, and the Netherlands' "only interest in having its damages rules applied is in protecting its own resident defendants." *Id.* at 1499.

Unlike *Marsh*, or even *Hurtado*, though, this case does not involve a damages limitation rule, which courts have recognized is "intended to protect defendants from large verdicts. It is not an attempt to limit the compensation of plaintiffs." *In re Aircrash in Bali, Indonesia*, 684 F.2d 1301, 1307 (9th Cir.1982) (citation omitted). Instead, this case involves Mexico's determination of the scope of its substantive law: the point at which it will attach tort liabili-

ty to conduct occurring within its borders. This decision is designed both to protect potential defendants—including foreign defendants who might otherwise avoid doing business in Mexico[1]—from liability for conduct that Mexico does not consider wrongful, and to limit plaintiffs from recovering even if such conduct damages them.

By choosing to regulate such conduct solely under its general illicit behavior statute, Mexico apparently has determined that it does not wish to punish conduct within its borders that does not rise to the level of illicit conduct. Indeed, there may even be some circumstances in which a third-party's interference with a Mexican contract might result in a net societal benefit—*e.g.,* when the "interference" enables a contracting party to find a better deal. In this case, for example, AT & T's alleged "interference" enabled Productos to extract itself from a bad situation with Avanti—a situation that was disruptive enough to involve high level government officials in both the United States and Mexico. The damaged party might still have a breach of contract remedy against the other contracting party but will have no cause of action against the third party.

Accordingly, Mexico has a significant interest in applying its law to this action.

### 2. New York's Interest

■ Coufal has not pointed to any activities that occurred in New York. Instead, he points to decisions made from offices in New Jersey and meetings that occurred in Atlanta.[2] The only reason behind Coufal's assertion that New York law should apply appears to be that AT & T's state of incorporation is New York. He argues that New York has an interest in regulating its resident corporations' conduct. However,

a company's contacts with a state that are not significantly related to the cause of action at issue are an insufficient basis for the application of that state's law. *Cf. McGhee,* 871 F.2d at 1424 ("California courts have rejected arguments that a party's contacts with California, unrelated to the cause of action at hand, create a basis for extending the reach of California's law."); *id.* at 1425 ("California, despite its interest in securing recovery for its residents, will not apply its law to conduct in other jurisdictions resulting in injury in those jurisdictions.").

Because New York does not have a significant interest in applying its law, there is a "false conflict" situation, and thus the district court correctly determined that the law of the interested jurisdiction, Mexico, should govern. *McGhee,* 871 F.2d at 1422.

### II. Statute of Limitations on the Mexican Illicit Behavior Claim

■ At the hearing on appellees' summary judgment motion, the district court found as follows:

> [T]o the extent plaintiffs' allegations are cognizable under the laws of Jalisco, Mexico, the claim would be governed by Article 1831 of the form of Jalisco civil code, authorizing a claim for illicit behavior. The statute of limitations for that kind of claim is two years.
>
> Plaintiff does not dispute that the cause of action accrued at the time of Coufal's termination in March of 1994. The action was filed in November of 1996. Therefore, the action is barred by the statute of limitations under the laws of Mexico.

7 *ER* 1539. On appeal, Coufal acknowledges that, under the law of Jalisco, illicit behavior claims are subject to a two-year statute of limitations. He did not dispute that, under American tortious interference

---

1. *Cf. Arno v. Club Med, Inc.,* 22 F.3d 1464, 1468 (9th Cir.1994) (noting, in a case involving a supervisor's tortious conduct against an employee in Guadeloupe, that "Guadeloupe has an interest in encouraging local industry and reliably defining the duties and scope of

liability of an employer doing business within its borders").

2. Coufal does not argue on appeal that either New Jersey or Georgia law should apply.

law, his claim accrued in March 1994. Regarding the possible illicit behavior claim, however, he argues that, under the Mexican Supreme Court's interpretation, the limitations period does not begin to run until the damage ends and that, because he has still not been paid under the contract, the damage is ongoing and the limitations period has yet to start.

AT & T argues that Coufal's argument regarding the interpretation of the Jalisco statute of limitations was not raised before the district court and is therefore waived. *See Broad v. Sealaska Corp.,* 85 F.3d 422, 430 (9th Cir.1996) ("To have been properly raised below, 'the argument must be raised sufficiently for the trial court to rule on it.'" (quoting *In re E.R. Fegert, Inc.,* 887 F.2d 955, 957 (9th Cir.1989))). We agree. AT & T raised the illicit behavior statute of limitations issue in its summary judgment motion. In his opposition papers, Coufal did not offer the district court his contrary interpretation regarding when the limitations period begins under Jalisco law. Since the district court did not have an opportunity to consider this argument, it is waived.

AFFIRMED.