CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE
I. INTRODUCTION
Before the Court is Defendant Orange County's motion for summary judgment. (Dkt. 86 [hereinafter, "Mot."].) For the following reasons, the motion is GRANTED.
II. BACKGROUND
The following facts are undisputed. In April 2014, Plaintiff Shane Miles Wilkey pled guilty to violating California Penal Code section 261.5(c) (felony unlawful sexual intercourse with a minor) and was placed on three years of supervised probation. (Dkt. 66 [Declaration of Frank Harrell, hereinafter "Harell Decl."] Ex. C [Deposition of Plaintiff Shane Wilkey, Volume II, hereinafter "Wilkey Depo. Vol. II"] 80:3-13, 94:1-95:1.) Plaintiff was arrested *1088 on June 6, 2016, for violating his probation by possessing sexually explicit material. (Id. 109:17-110:20; Dkt. 103 [Plaintiff's Opposition to Defendant's Statement of Uncontroverted Facts, hereinafter "SUF"] 1.) After his arrest, Plaintiff was incarcerated at the Orange County Jail from June 6, 2016, until his release on June 9, 2016. (Dkt. 50 [hereinafter "TAC"] ¶ 11; SUF 1, 24.)
Upon arrival at the Orange County Jail, Plaintiff was evaluated by a health professional as required by Orange County Health Care Agency ("OCHCA") protocol. (SUF 6.) During this initial screening process, a registered nurse asked Plaintiff if he had any medical conditions or if he had been taking any medications. (Id. 7.) Plaintiff told the registered nurse he was taking mental health-related medications. (Id. 8.) Based on Plaintiff's answer, the registered nurse referred Plaintiff to the mental health triage for a follow-up mental health evaluation, as required by OCHCA protocol. (Id. 9.) Plaintiff claims he had a panic attack during the three hours between his initial health evaluation and his mental health screening. (Wilkey Depo. Vol. II 136:1-137:17.) When a registered nurse in the mental health triage conducted a mental health screening of Plaintiff, (id. 10), Plaintiff told the nurse he had been prescribed mental health medication, but he did not remember what medications or doses he was taking, (SUF 11; Dkt. 90 [Declaration of Denise Patarello, hereinafter "Patarello Decl."] Ex. A). Pursuant to OCHCA protocol, (SUF 13), the mental health triage nurse prepared an "Authorization to Use & Disclose Protected Health Information" ("PHI") for dispatch to Plaintiff's pharmacy to discern the type and dosage of medication Plaintiff had been prescribed, (id. 12). OCHCA safety protocol requires jail personnel to verify an inmate's medications with the inmate's health care provider before administering the medications. (Id. 13.) Plaintiff signed the PHI. (Id. 14.) The registered nurse informed Plaintiff how to contact mental health staff, should he feel the need to do so, while confirmation was pending. (Patarello Decl. Ex. A.) The mental health triage nurse then faxed the PHI to Plaintiff's pharmacy on June 6, 2016, around 5:45 p.m. (Id. 15.) On June 6, 2016, around 8:20 p.m., Plaintiff was again seen by a registered nurse and told the nurse he wanted his mental health medications. (Harrell Decl. ¶ 8, Ex. G.) The nurse again explained that the medical staff was required to verify the identity and dosage of his medications with his pharmacy, and Plaintiff expressed his understanding of this safety protocol. (Id. )
Plaintiff's pharmacy faxed a copy of Plaintiff's "Patient Profile" back to the Orange County Jail on June 7, 2016. (Id. 16.) According to the Patient Profile, Plaintiff was prescribed Escitalopram and HydrOXYzine. (Id. ) Shortly after receiving Plaintiff's Patient Profile, a registered nurse placed an order through the jail pharmacy for Escitalopram and HydrOXYzine. (Id. 17.) On June 7, 2016, around 1:00 or 2:00 p.m., Plaintiff was given the medication authorized by his pharmacy, specifically "50 MG" of "HydrOXYzine Pamoate." (Id. 18-19.) Plaintiff received medication again on June 7, 2016, around 6:00 or 7:00 p.m. (Id. 20.) On June 8, 2016, Plaintiff received another dose of medication between 3:00 and 4:25 a.m., (id. 21), and around 7:56 p.m., (id. 22). Plaintiff was released from jail custody on June 9, 2016, (id. 23), and was given 10 MG of Escitalopram before his release, (id. 24). Plaintiff admits that he received medication at all of these times, but argues that "[i]mmediately necessary medical care [was] denied, threatened, [and] no medication provided ... Plaintiff needed medical attention and medication but was threatened instead ...
*1089 Plaintiff had a panic [sic] and was provided no medication." (SUF 6, 9-17.) Plaintiff argues these actions amount to a "failure to accommodate Plaintiff's disabilities ... due to the customs, patterns, and practices, of the County of Orange as carried out by [former] Defendants Steven J. Sentman and Rodney S. Grantham for failing to provide ADA accommodations, including mental health care to Mr. Wilkey's damage." (TAC ¶ 37.)
At the time of Plaintiff's June 6, 2016, arrest, Plaintiff claims he was experiencing sporadic "panic attacks" for which he was taking prescribed medication. (SUF 5.) Plaintiff identifies one "panic attack" "hospitalization" on an unidentified date, and alleges he has suffered a three panic attacks in total. (Id. 5; Wilkey Depo. Vol. II 209:20-210:9; Harrell Decl. Ex. D.) Plaintiff denies that he suffers from isolated panic attacks, but rather states he has "regular panic attacks and continuing anxiety, stress and depression issues." (SUF 5.) Plaintiff's denial is supported by Plaintiff's Declaration attached to his Opposition. (Dkt. 102-2 [hereinafter "Wilkey Decl."].) Plaintiff states in his declaration that he has a disability, (id. ¶¶ 5, 7, 9), that he is "unable to participate in ordinary life functions as a result of [his] disability" and suffers from anxiety, (id. ¶ 7), and that he is "still on medication for [his] continuing disability [he is] currently taking Escitalopram and Hydroxyzine HCL which cause migraines," (id. ¶ 9.)
Plaintiff originally filed suit against the County of Orange, Sheriff Hutchens, Chief Probation Officer Steven J. Sentman, and Rodney S. Grantham on June 23, 2016, bringing four causes of action-two pursuant to 42 U.S.C. § 1983 alleging various deprivations of substantive due process, and two alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. (Dkt. 1.)[1] Plaintiff's operative complaint is his Third Amended Complaint ("TAC"). (TAC.)[2] The TAC brought two causes of action: one pursuant to 42 U.S.C. § 1983 against the County of Orange, Sheriff Hutchens, and Chief Probation Officer Sentman, and a second claim for violation of the ADA against the County of Orange, Chief Probation Officer Sentman, and Mr. Grantham. (Id. ) Defendants filed motions to strike and dismiss the TAC on February 9, 2017, (Dkts. 52, 53), and the Court dismissed Plaintiff's first cause of action and the related class action allegations, as well as the second cause of action as to Sentman and Grantham on March 1, 2017, (Dkt. 56 ("Despite this Court's clear guidance, Plaintiff's TAC is substantially identical to his original Complaint, his FAC, and his SAC."). Plaintiff *1090 filed an amendment to his Prayer for Relief on March 8, 2017, to indicate his cause of action arises under Title II of the ADA, rather than "Title III." (Dkt. 57.) Plaintiff now brings a single cause of action for an ADA violation against the County of Orange. (TAC ¶¶ 29-37.)[3]
III. LEGAL STANDARD
The Court may grant summary judgment on "each claim or defense-or the part of each claim or defense-on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. ; see also Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. , 477 U.S. at 325, 106 S.Ct. 2548. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 249, 106 S.Ct. 2505.
Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc. , 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, Adickes v. S.H. Kress & Co. , 398 U.S. 144, 158-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, Celotex Corp. , 477 U.S. at 325, 106 S.Ct. 2548. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." Anderson , 477 U.S. at 256, 106 S.Ct. 2505. A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)-(B). The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But the opposing party must show more than the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]." Anderson , 477 U.S. at 252, 106 S.Ct. 2505.
In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the *1091 non-moving party, and draw all justifiable inferences in its favor. Id. ; United States v. Diebold, Inc. , 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) ; T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n , 809 F.2d 626, 630-31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. Eastman Kodak Co. v. Image Tech. Servs., Inc. , 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. Thornhill Pub. Co., Inc. v. GTE Corp. , 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact-including an item of damages or other relief-that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).
IV. DISCUSSION
Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of his disability. Lovell v. Chandler , 303 F.3d 1039, 1052 (9th Cir. 2002). Because Plaintiff has failed to make a prima facie case for disability discrimination, summary judgment is proper. See Simmons v. Navajo Cty., Ariz. , 609 F.3d 1011, 1022 (9th Cir. 2010).
A. Plaintiff Has Not Established He Is a Qualified Individual With a Disability
Plaintiff has not presented sufficient evidence that he is a person with a disability as defined by the ADA. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment ..." 42 U.S.C. § 12102. A person is substantially limited in a major life activity when that person is "unable to perform the major life activity" or is "significantly restricted as to condition, manner or duration under which [she] can perform a particular major life activity as compared to ... the average person in the general." Coons v. Sec'y of U.S. Dep't. of Treasury , 383 F.3d 879, 885 (9th Cir. 2004) ; 29 C.F.R. § 1630.2(j) ).
Plaintiff has failed to establish that he has a physical or mental impairment that qualifies as a disability under the ADA. Plaintiff's alleged disability amounts to three sporadic panic attacks and anxiety. His only medical diagnosis provided to Defendant during discovery was a letter from a Physician's Assistant at "Ross Medical Associates" which indicates Plaintiff visited their office on April 7, 2015, "for a possible panic attack." (Harrell Decl. Ex. D.) Plaintiff's sole evidence cited in his Opposition is his own declaration containing conclusory statements that he suffers from a disability. (Opp. at 3-5[4] ; Wilkey Decl. ¶¶ 5, 7, *1092 9[5] .). The Ninth Circuit has made clear that a doctor's declaration that makes conclusory statements that a plaintiff suffers from various physical and mental impairments is insufficient evidence to make a prima facie case for an impairment that substantially limits a major life activity. See Coons , 383 F.3d at 886. Plaintiff's own description of his mental condition and life experience is even less probative than a doctor's conclusory diagnosis. Plaintiff's "bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." F.T.C. v. Stefanchik , 559 F.3d 924, 929 (9th Cir. 2009).
Plaintiff has also failed to establish that his episodic panic attacks have been caused by or are related to a long-term underlying condition. See Sanders v. Arneson Prod., Inc. , 91 F.3d 1351, 1354 (9th Cir. 1996) ("Several courts have held that a temporary injury with minimal residual effects cannot be the basis for a sustainable claim under the ADA") (collecting cases). In Sanders , the Ninth Circuit held that the plaintiff's temporary psychological impairment, which lasted about four months and had no residual effects, "was not of sufficient duration to fall within the protections of the ADA as a disability." Id. ; cf. Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 878-879 (9th Cir. 1989), cert. denied, 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990) (holding that a chronic sufferer of acute cluster migraines was disabled within the meaning of the ADA because the plaintiff suffered episodic outbreaks of an underlying permanent condition). Without a long-term underlying condition, Plaintiff's sporadic panic attacks do not amount to an impairment that substantially limits a major life activity. Plaintiff's conclusory statement that he suffers from anxiety is insufficient evidence to establish a long-term underlying condition. See Coons , 383 F.3d at 886 ; Anderson , 477 U.S. at 252, 106 S.Ct. 2505.
B. Plaintiff Does Not Argue That He Was Excluded from Participation or Denied Benefits By Reason Of His Disability
To set forth an ADA claim, Plaintiff bears the burden of establishing he was excluded from participating in or denied the benefits of the County's services, programs, or activities "by reason of [his] disability." Lovell , 303 F.3d at 1052 ; see also Memmer v. Marin County Courts , 169 F.3d 630, 633 (9th Cir. 1999). Plaintiff has failed to meet his burden in this regard.
The record clearly shows Plaintiff was treated under the OCHCA safety protocols applicable to all other inmates who report treating mental health issues with prescribed medication. Once Plaintiff reported that he was taking mental health medications, a registered nurse verified his prescribed medications and dosages. The jail staff placed a medication order with the jail pharmacy less than an hour after receiving confirmation of Plaintiff's prescribed medications from his pharmacy. Plaintiff admits that he was provided medication within twenty-four hours of arriving at the jail, throughout his incarceration, and upon his release. Plaintiff has pointed to no facts or provided any evidence that he was treated any differently than other similarly-situated jail inmates. See Simmons , 609 F.3d at 1021-22 (holding *1093 that the plaintiff "failed to adduce any evidence" that the jail's outdoor recreation restriction "was anything but a legitimate effort to protect" the plaintiff, and that even if the plaintiff was denied access to outdoor recreation, "such [a] denial was not because of his depression, but due to a jail policy restricting the activities of inmates on suicide watch.") Indeed, Plaintiff does not even allege he was treated differently than any other similarly-situated inmates, let alone provide evidence of such disparate treatment.[6]
Contrary to Plaintiff's assertion, there is no evidence that he was denied medical treatment or discriminated against because of his alleged disability. The evidence demonstrates that the County made extensive efforts to verify Plaintiff's medication needs and provide him with his medication as necessary. Moreover, when Plaintiff asked for medication before his pharmacy had verified his medications, the nurse explained the verification protocol and that Plaintiff could contact the jail mental health staff if necessary. Plaintiff indicated that he understood the process. This "delay" in Plaintiff's treatment was for safety purposes, and Plaintiff was not "denied" his medication because the County discriminated against him.
Without any evidence of discriminatory intent, Plaintiff's allegations boil down to Defendant denied him mental health medication and did not immediately provide him medically necessary care. These allegations are not supported by the evidence and in any event, do not state claim under the ADA. "The ADA prohibits discrimination because of disability, not inadequate treatment for disability." Simmons , 609 F.3d at 1022 (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners ... The ADA does not create a remedy for medical malpractice.") ); see, e.g., Calloway v. Contra Costa Cty. Jail Corr. Officers , No. 01-cv-2689-SBA, 2007 WL 134581, at *34 (N.D. Cal. Jan. 16, 2007) (holding the ADA is "not violated by a prison's failure to adequately address the medical needs of disabled inmates"); Arreola v. California Dep't of Corr. & Rehab. , No. 16-CV-03133-JD, 2017 WL 1196802, at *2 (N.D. Cal. Mar. 31, 2017) ("While these allegations might point to indifference or negligence, they do not show [the plaintiff] was discriminated against, or denied benefits, by reason of a disability."); Brown v. Brown , No. 1:14-CV-01184-LJO, 2015 WL 2374284, at *6 (E.D. Cal. May 18, 2015) ("[A]llegations ... related solely to the medical care Plaintiff was provided, and the treatment, or lack of treatment, concerning Plaintiff's medical conditions does not provide a basis upon which to impose liability under the ADA.").[7]
*1094 V. CONCLUSION
For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. Defendant's pending motions in limine and related application, (Dkts. 117, 118, 119, 122), are DENIED as moot.

The Complaint alleged that Plaintiff was arrested and not given a probable cause hearing within 48 hours. (Dkt. 1 ¶ 10.) It also alleged that Plaintiff suffers from panic attacks, a fact allegedly known to his probation officer, Rodney S. Grantham, who he claims deliberately induces such attacks rather than accommodating the disability. (Id. ¶¶ 11-12, 14.) Plaintiff alleged that he was refused medical care in jail for a panic attack on June 6, 2016. (Id. ¶ 11.)

On June 28, 2016, Plaintiff filed a First Amended Complaint ("FAC"). (Dkt. 9 [hereinafter "FAC"].) The First Amended Complaint was virtually identical to the Complaint. Defendants filed motions to strike and dismiss portions of the FAC on August 4, 2016, (Dkts. 17, 18), and the Court granted the motions to dismiss on September 12, 2016, with thirty days' leave to amend, noting the "convoluted and incomprehensible nature of the FAC," (Dkt. 27). On October 11, 2016, Plaintiff filed a Second Amended Complaint ("SAC") which was substantially equivalent to the FAC. (See Dkt. 28 [hereinafter "SAC"].) Defendants filed motions to strike and dismiss the SAC on November 11, 2016, (Dkts. 34, 35), and the Court dismissed the SAC with fourteen days' leave to amend on December 20, 2016, (Dkt. 47).

A hearing was held on Defendant's motion for summary judgment on November 9, 2017, at 9:00 a.m. Plaintiff's counsel, Mr. Herman, did not appear at the hearing. The Court notes that the hearing had been continued from its original date of October 23, 2017, at Plaintiff's request. (see Dkts. 97, 101.)

The majority of Plaintiff's Opposition consists of citations to Wikipedia definitions for Plaintiff's prescribed medications, (Opp. at 4-5), and recitations of the legal standards for proving a plaintiff is disabled within the meaning of the ADA, (id. at 5-9.)

Defendant filed objections to paragraphs 5, 6, and 8 of Plaintiff's declaration. (Dkt. 110.) The Court considered those paragraphs to the extent Plaintiff believes that he has a disability and Defendant made it worse.

Plaintiff does not address this point in his Opposition, which the Court can treat as consent to dismissal of his claim. See Foster v. City of Fresno , 392 F.Supp.2d 1140, 1147 (E.D. Cal. 2005) ("[F]ailure of a party to address a claim in an opposition to a motion for summary judgment may constitute a waiver of that claim.") (citing Coufal Abogados v. AT&T, Inc., 223 F.3d 932, 937 (9th Cir. 2000) ).

Plaintiff's Opposition and supporting declarations contain facts concerning Plaintiff's treatment by various non-parties before his incarceration on June 6, 2016, as well as introduces allegations about "West waivers" that have not been raised thus far in the litigation. (Opp. at 3-4; see generally Dkts. 102-1, 102-2, 102-3.) "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n , 809 F.2d 626, 630 (9th Cir. 1987) (citing Anderson , 477 U.S. at 247-48, 106 S.Ct. 2505 ("By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis in original) ). These factual allegations are irrelevant to Plaintiff's claim that the County discriminated against Plaintiff on the basis of his alleged disability by inadequately treating his mental health needs.